By the Court:

Monell, J.
This case raises the interesting question of what constitutes a marriage, a question upon which there is much diversity of opinion, and have been many statutory regulations.
The common law requires no particular ceremony to its valid celebration.
If the parties are willing to contract, able to contract, and have actually contracted, no form of solemnization is necessary to consummate the marriage, except the avowal of consent in the presence of witnesses.
In many of the States there are statutory regulations on the subject. In most of them the marriage is required to be made in the presence and with the assent of a magistrate or of an ordained clergyman.
Some of them require previous publication of the intention of marriage and the consent of parents or guardians. In others, a *319 license must be obtained from a judge of the parish, and the marriage celebrated before a minister of a religious sect, in the presence of at least three adult witnesses.
Notwithstanding these statutory provisions, it has quite uniformly been held that marriages are valid, although the directions of the statute may not have been observed, except where the statute declares null and void a marriage not consummated in conformity to it.
But the statute of this State (2 Rev. Stat., 138, § 1) declares that marriage, so far as its validity in law is concerned, shall continue a “ civil contract,” to which the consent of parties capable in law of contracting shall be essential. No form of ceremony is prescribed or required ; but for the purpose of registration and authentication marriages must be solemnized by ministers of the gospel or priests of any denomination; mayors, recorders, or aldermen of cities; judges of county courts, or justices of the peace (ibid., § 8). When solemnized by a minister or priest, the ceremony shall be according to the forms and customs of the church or society to which he belongs. When by a magistrate, no form is required, except that the parties shall declare that they take each other as husband and wife.
The question of the validity of a marriage not solemnized according to the requirements of law is understood to be unsettled at the present time in those parts of the British dominions not included in the marriage act of 26 Geo. 2, c. 33. A formal decision of the Court of Queen’s Bench of Ireland, in favor of such a marriage, but which decision was made against the opinion of at least three of the judges, for the purpose of obtaining a review by the House of Lords, was affirmed by a division of the latter court, leaving the question, therefore, substantially undetermined (Reg. v. Millis, 10 C1. & F., 534).
In this country, however, it is understood that a declaration of consent by persons capable of contracting, made in the presence of witnesses, is sufficient to constitute a valid marriage, unless it be opposed by some statutory regulation rendering marriages void which are solemnized otherwise than by some prescribed form.
*320 Chancellor Kent says (2 Kent Com., 52, 7th ed.), the contract, if made per verba deprmsenti, and remains without cohabitation, or if made per verba defutwro, and followed by consummation, amounts to a valid marriage “ in the absence of all civil regulations to the contrary.”
There is also in many of the States a most just provision that a marriage, duly solemnized to all appearance, shall not be made void by any want of formality, if it be consummated with a full belief, on the part of both or either of the parties, that they were lawfully married.
Such provision, however, is necessary in those States only where some particular form or ceremony is prescribed by statute, and it has not been enacted where a marriage made by the contract of the parties is complete and valid.
Although no form or ceremony for the solemnization is required in this State to render a marriage valid, yet there must be evidence of the consummation of the contract. The consent of the parties must be established. If it be declared before a magistrate, or in the presence of witnesses, it is ordinarily easy of proof. So the confession or acknowledgment of the parties is in some eases sufficient. These are all cases of direct proof. There are, however, cases where no direct proof can be furnished; cases where no ceremony has been performed, or consent declared in the presence of a magistrate or of witnesses, where a marriage may be inferred from circumstances, such as continual cohabitation and reputation as husband and wife; acknowledgment by the parties themselves that they were married; their reception as such by their friends and relations; acknowledging their children as legitimate offspring; and generally any circumstances or act indicating a marriage relation of the parties.
Hone of these circumstances, however, are actual proof of marriage. They do not directly or affirmatively establish it, but from them it may legitimately be inferred or presumed that a valid marriage had been consummated, and, like all other mere presumptions, are prima facie evidence only of marriage.
It is proper, however, to qualify this by the general remark, that other evidence of marriage than cohabitation and repute is *321 required in actions for criminal conversation, and in indictments for bigamy, etc.
The rule of the common law, that no formal ceremony is required in consummating a marriage, and that a marriage may also be inferred from circumstances, has frequently been j udicially recognized and sanctioned in this State. In Fenton v. Reed, 4 Johns. Rep., 52, it is said that a marriage may be proved from cohabitation, reputation, acknowledgment of the parties? reception in the family, “ and other circumstances from which a marriage may be inferred.” A marriage thus established, the court say, is valid, as if made in facie ecclesice. Again, in Jackson v. Claw, 18 Johns. Rep., 346, cohabitation and the declaration of the parties were deemed sufficient ground to presume an actual marriage. These have been followed by numerous cases. Two or three only are cited, viz.: Matter of Taylor, 9 Paige, 611; Clayton v. Wardell, 4 New York Rep., 230; and the more recent case of the People v. Hays, 25 ibid., 390, where the rule is fully supported that the circumstances which have been alluded to, such as cohabitation and general repute, are sufficient to authorize an inference of marriage.
Yet the circumstances which have been mentioned raise a bare presumption of marriage. They are not conclusive, but at most prima facie merely. Every intendment of the law is in favor of matrimony. When it has been 'shown, however celebrated, whether regularly or irregularly, or however proved whether by direct or circumstantial evidence, the law raises a-strong presumption in favor of its legality, nevertheless, as-before stated, it is not conclusive, and the burden- is upon the-objecting party, throughout and in every particular, to prove, against this presumption of law, that no marriage ever was consummated, or was intended to be consummated, or that it was null and void. In Jackson v. Claw, ubi supra, Chief Justice Spencer says: “ Cohabitation and declaration of the parties afford strong prima facie evidence of a marriage in fact; but in the-present case, the presumption is encountered- by strong facts, producing very great doubt of an actual marriage.
*322 “ It is, therefore, always competent to repel the inference of marriage, by proof that marriage never took place, or was never intended, or was never consummated; and it may be shown that the parties have designedly, and with mutual understanding, lived together in illicit intercourse, without ever intending to create or establish a different relation between them. As the Chancellor said in Rose v. Clark (8 Paige, 582), the mere fact of a man and woman living together, and, carrying on an illicit intercourse, is wholly insufficient to raise a legal presumption of marriage. The presumption can arise only from matrimonial cohabitation, when the parties not only live together as man and wife, but hold themselves out as sustaining that relation.”
And in Clayton v. Wardell, ubi supra, the court say : “ The legal presumption of marriage arising from mere cohabitation is at least weakened by the circumstances under which their connection had its origin.”
I think the plaintiff in this case has, by her own showing, made out a very strongjprima, facie case of actual marriage.
She has stated facts and circumstances of a nature sufficient, if unexplained, to warrant the presumption that the relation of husband and wife existed, and had long existed, between the defendant and herself, and which would necessarily cast the burden of repelling such presumption upon any person who has a right to object to the relation thus presumptively established.
Indeed, I may say further than this, that, looking at all the facts and circumstances stated by the plaintiff in her affidavit, which as yet are not any of them controverted by the defendant, it would be difficult to furnish a stronger case of presumptive marriage. And it must require great faith in the plaintiff, (upon whom the burden lies of repelling the presumption which she, by her own testimony, has raised) in her ability to get rid of the effect of such testimony, especially in a-case where the presumptions of law and fact are carried to the very verge to uphold a marriage where marriage was intended by the parties.
In a case of so great doubt, and where the plaintiff has such apparently slight grounds for her action, it was wise, I think, *323 and the exercise of a sound judgment and discretion, to vacate the order of arrest, and I should have contented myself with merely agreeing to an affirmance of the order, had not the learned justice who decided the motion below held, that the facts stated by the plaintiff were conclusive. In that, I think, he was in error, as I have endeavored to show. They are strongly presumptive, but not conclusive; and the plaintiff, notwithstanding she is deprived of the provisional remedy of arrest, may still prosecute the action, and endeavor before a jury to rebut the presumption which she has raised.
The order should be affirmed.