## Case No. 1,338.

### In re BERGEN.

[2 Hughes, 513;[1] 4 Am. Law T. 39.]

Circuit Court, D. North Carolina. 1870.

COURTS—FEDERAL—FOLLOWING STATE PRACTICE—ARREST FOR DEBT—POWER OF JUDGE.

1. Title 9, c. 1, subsecs. 149, 150, and 157 of the Code of Civil Procedure of North Carolina, and the act of congress of March 2, 1867,

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

conforming the proceedings of United States courts in cases of arrest on mesne process to those prescribed by law in the several states, construed together, and they were *held* not to authorize the arrest of a non-resident party defendant on the mere affidavit of plaintiff in cases where the cause of action is for an injury to the person or character; authority for the arrest must be given by the judge, in whose discretion alone it lies to fix the amount of security to be required of the plaintiff, and the amount and character of defendant's bail.

[See U. S. v. Tetlow, Case No. 16,456.]

2. A judge of a United States court has no power or jurisdiction to authorize the arrest of a citizen for any breach of the peace or violation of the laws of a state.

[See U. S. v. Barney, Case No. 14,524.]

On habeas corpus.

BOND, Circuit Judge. It appears from the return of the marshal in this case, that he holds the prisoner, Bergen, in custody by virtue of three writs of capias ad respondendum, issued out of the circuit court of the United States for the district of North Carolina in trespass for assault and battery, and false imprisonment of the plaintiff.

Chapter 1, tit. 9, subsec. 149, of the Code of Civil Procedure of North Carolina, provides that a defendant may be arrested in an action for the recovery of damages on a cause of action not arising out of contract * * * when the action is for an injury to person or character. Section 150 of the same chapter provides that "an order for the arrest of the defendant must be obtained from the court in which the action is brought or from the judge thereof;" and section 157 provides that the order may be made when it shall appear to the court or judge thereof by the affidavit of the plaintiff, or of any other person, that a sufficient cause of action exists, and the case is one of those mentioned in section 149. The act of congress approved March 2d, 1867, [14 Stat. 543, c. 180,] requires the courts of the United States to conform their proceedings in all cases of arrest upon mesne process to the mode of practice prescribed by law in the several states.

It is clear from these provisions of the Code of North Carolina, that the plaintiff in an action is not given an absolute right to the arrest of a defendant. The laws of the state have been careful of the liberty of the citizen, and have placed the power to arrest in the discretion of a judge or of a court. The language of the Code is permissive only. The words are not that he shall make the order when the plaintiff has made the required affidavit, but that the order may be made. Before such order can be issued there must have been an exercise of the judicial mind. In these cases no such order has been asked or granted. The suit is commenced by the issuing of the capias by the plaintiff, or by the clerk at their suggestion. There has been no exercise of judicial discretion. No summons was issued to commence the action as in ordinary practice, but upon the making of what was con-

sidered by the plaintiff a sufficient affidavit the summons was altered into a capias ad respondendum, and the defendant arrested. To do this is not within the power of the plaintiff. The act of ordering the arrest of the party is a judicial and not clerical act, as is further shown by section 152 of the Code, which provides that·the judge before making the order shall require the plaintiff to furnish security to pay all damages sustained by defendant.

What amount of security the plaintiff shall give, and the amount and character of bail of defendant, are matters for the exercise of this discretion. The law, by making it necessary that the judge should decide whether to make an order of arrest or not, what security the plaintiff, and bail the defendant, should give, has endeavored to guard this power of imprisonment by every precaution for the protection of the liberty of the citizen. The Code has not left the power to an angry plaintiff, in case of simple assault and battery, to fix his damages at any exorbitant sum he pleases, in order that the clerk, under the old practice, shall require bail in double that sum, so that the defendant might be imprisoned because he could not give it. This would be the consequence were the procedings in these cases sustained. There has been no judicial act fixing the amount of the plaintiffs' security for the damages sustained by the defendant, provided the plaintiffs fail in their suit.

While the bail required of the defendant, ·under the practice prevailing before the adoption of the Code in 1868, is fixed at twenty-eight thousand dollars, it has been suggested by counsel that it would be a great inconvenience if parties were required to follow the judges about the circuit to obtain such orders of arrest. But the inconvenience to a defendant, who perhaps (as in this case) is a non-resident of North Carolina, who is arrested away from friends and bail, upon charge of assault and battery, is equally great. The provisions of the Code of North Carolina referred to above are taken from the Code of New York, and I am strengthened in the view I have taken by the remarks of the court in the case of Knickerbocker Life Ins. Co. v. Ecclesine, the language of which I have adopted chiefly. 6 Abb. Pr. [N. S.] 23. It appears to me clearly, that the writs of capias in these cases have issued without legal warrant, and that there is no sufficient order of arrest to detain defendant. But the marshal also returns that he holds the defendant by virtue of the following warrant:

"United States of America, District of North Carolina. To the Marshal of said District, Greeting: Whereas, it appears to me upon the oath and examination of D. W. Weeden, Geo. S. Rogers, Thomas E. Evans, J. H. Murray, and others, citizens of the United States, that B. G. Bergen, late of said district, is an evil-disposed person, that he habitually goes about armed with pistols, swords, and other unlawful and dangerous weapons, and violently seizes without any lawful warrant or authority peaceful and law-abiding citizens of the United States, at and in said district, and threatens with curses and oaths to persist in such unlawful proceedings. And, whereas, it further appears to me upon such oath and examination, that the said B. G. Bergen, in said district, on or about the 1st day of August, A. D. 1870, did, the said Geo. S. Rogers, J. H. Murray, D. W. Weeden, Wm. Patton, and others, beat, hang, imprison, manacle, maltreat, and injure them, and threaten to repeat such injuries and take the lives of them; the said D. W. Weeden. J. H. Murray, Geo. S. Rogers. Wm. Patton, and others, against the constitution and laws of the United States. Now, therefore, you are hereby commanded in the name of the United States, to take the body of said B. G. Bergen, and bring him before me, wherever I may be in said district, to answer a charge against him of the United States for the matters and things so alleged against him, and be dealt with according to law. Given under my hand and seal, at chambers, in Raleigh, the 26th day of August, A. D. 1870. George W. Brooks, Judge of the District Court of the United States, for the District of North Carolina."

I regret exceedingly that at the hearing of this case I had not the benefit of the advice and counsel of the distinguished judge of the district court. I have been unable, however, to learn from the remarks of counsel, or to find from my investigation since, the jurisdiction in the court of the United States to admit of this arrest. It has long been determined that these courts are of limited jurisdiction, and that they do not exercise common law jurisdiction in criminal cases. Nothing can be punished by them not made criminal by statute, and even in cases where government is the party aggrieved, the common law offence is only cognizable in the state courts.

The offence charged in this warrant, however grievous, is a violation of the peace of North Carolina. There could be no indictment framed under any act of congress which has been brought to my notice to punish the offence charged, and it will hardly be contended that the courts of the United States may issue warrants to prevent offences that they are powerless to punish. If this case, presented in the warrant set out, be within the jurisdiction of the district court, there can hardly be conceived a case of wrong-doing which is not within that jurisdiction. The warrant states that the conduct of petitioner recited therein was in violation of the constitution of the United States, and at bar the first section of the fourteenth amendment is alluded to as the particular section violated.

The petitioner was an officer of the militia of North Carolina when he made the arrest complained of. The law of North Carolina

authorizes the governor of the state, when in his judgment any part of the state was in insurrection, to call out the militia and to suppress it by force. The governor had by proclamation declared the particular locality in which the affiants resided in a state of insurrection, and had sent the petitioner with troops to suppress it. Now, so far as the courts of the United States were concerned, and with submission, they and all other courts were bound to abide by the judgment of the governor in this respect, because he was the only person in the state authorized by law to determine the fact whether there was an insurrection or not, and when he proceeded to enforce the law of the state in obedience to military power granted him against persons in insurrection in the state, he was enforcing no law which abridged the privileges or immunities of citizens, because it is not the privilege of a citizen to be engaged in an insurrection. Nor was such proceeding one which deprived any person of life or liberty, without due process of law, because in time of insurrection, when the civil power appeals to force to support its authority, the sword is due process of law. The supreme bench of the state has held the militia law constitutional, and I agree with the judges in their opinion.

The parties arrested deny their participation in the insurrection, and we may assume their innocence, but the fact does not give the United States courts jurisdiction to inquire into the case. Innocent parties are daily arrested by due process of law, and if that gave the courts of the United States power to issue writs of habeas corpus to inquire into the justice or injustice of their arrest, every criminal case in the state would be tried first on habeas corpus. I have little doubt from the facts stated, that the affiants were treated with great harshness, if not cruelty, by the petitioner. For this he is answerable in the tribunals of the state. The courts of the United States, while they have carefully maintained their own powers, have been scrupulously careful not to encroach upon the powers of the state courts. The jealousy which existed between them at the origin of the government has served to guard each from conflict with the other. I am extremely sorry to differ from my learned associate, whose opinion I highly respect, but I am of opinion that this case was out of the jurisdiction of the court, and I have discharged the party.