NORMAN, The (KERR v.). See Case No. 7,-732.

## Case No. 10,300.
### NORMAN v. MANCIETTE.
[1 Sawy. 484;[1] 4 Am. Law T. Rep. U. S. Cts. 60; 3 Leg. Gaz. 132.]

Circuit Court, D. Oregon. Feb. 22, 1871.

ARREST OF DEBTOR — TIME WITHIN WHICH TO CHARGE BODY IN EXECUTION — ABSCONDING DEBTOR, WHO IS — CONSTITUTIONALITY OF LAW TO ARREST AND IMPRISON — ACTION FOR FALSE IMPRISONMENT—PROBABLE CAUSE—DAMAGES.

1. A creditor who has caused the provisional arrest of an absconding debtor under section 106 of the Code (Code Or. 164) has until the time allowed for a return of an execution against property to charge the body of such debtor in execution.
[Cited in U. S. v. Griswold, 11 Fed. 808.]

2. An absconding debtor is one who is about to leave the state, either openly or secretly, with intent to hinder, delay or defraud his creditors of their just debts.

3. A debtor who is about to remove from this state without the consent of his creditors and without a mind to return, is presumed to be acting with such intent, and prima facie he is an absconding debtor.

4. The legislature has power to authorize the arrest and imprisonment of such a debtor so as to enable his creditors to enforce the establishment and collection of their debts by legal proceedings in the tribunals of this state.

5. There can be no recovery in an action for false imprisonment when it appears that the affidavit on which the defendant procured the arrest of the plaintiff is sufficient on its face, because then there is no trespass; and if the affidavit be false, the action must be for malicious prosecution, in which both malice and want of probable cause must be alleged and proved.

6. In an action for false imprisonment, the question of probable cause is only material in mitigation of damages.

[This was an action by Frederick Norman against Pierre Manciette for false imprisonment.]

O. P. Mason, for plaintiff.
J. W. Whalley and M. W. Fechheimer, for defendant.

DEADY, District Judge. On May 10, 1870, the plaintiff commenced an action in the circuit court of Multnomah county, against the defendant and A. Labbe and John C. Work, for false imprisonment, wherein he laid his damages at $5,000. On July 25, the state court, on the petition of the defendant Manciette, made an order removing the cause as to him to this court, on the ground that the plaintiff was a citizen of Oregon and of the United States, and the defendant was an alien and a subject of the empire of France.

On September 5, the defendant answered the complaint in this court, whereby he admitted that he caused the arrest of the plaintiff as follows: That on April 6, 1870, the

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

plaintiff being indebted to defendant, and an action being then pending before Justice Work, in Central Portland precinct, to recover said debt, the defendant made and filed in said justice's court the following affidavit, in pursuance of which said justice then and there issued a writ of arrest against plaintiff, upon which he was then arrested and taken before said justice, and in default of bail was by said justice committed to the jail of the county, where he remained until he was discharged by order of defendant, on April 13. The answer also averred, that said affidavit was true, and that the justice had jurisdiction to issue the writ, and that the proceedings thereunder were regular and lawful. The affidavit is in these words:

"P. Manciette v. Fred. Norman: I, P. Manciette, being first duly sworn, say, that I am the plaintiff above named; that the defendant is indebted to me in the sum of $46, upon an account stated on or about April 5, 1870, at which time defendant promised to pay said sum of $46; although requested, he has failed to pay said sum or any part thereof and the same is now justly due and owing plaintiff from defendant, and that defendant is about to leave the state of Oregon, with intent to delay, hinder and defraud his creditors. Wherefore the plaintiff prays that a writ may issue for his arrest as in such cases provided."

On November 2, plaintiff replied to the answer and denied that the justice had jurisdiction to issue the writ of arrest, as alleged in the answer, or that the proceedings thereunder were regular and lawful, and alleged that the plaintiff was discharged from said arrest on April 13, by order of the circuit court for the county of Multnomah, state of Oregon, upon a writ of habeas corpus sued out by said plaintiff, and not by the order of said defendant, as alleged in the answer.

The cause was tried at the September term and a verdict found for defendant. The plaintiff moved for a new trial, upon the ground of error in the instructions of the judge to the jury. On January 17, 1871, the motion was argued and submitted. On the argument of the motion, two points were made by counsel for plaintiff:

(1) Admitting the legality of the original arrest, plaintiff was detained thereon one day longer than he should have been, and for this he was entitled to a verdict.

(2) That the affidavit upon which the writ of arrest issued is insufficient and therefore not a justification of the arrest.

To understand the first point, it is necessary to state that on the trial it appeared. that the action against Norman by Manciette was commenced on April 6—the date of the summons therein—and that on April 12—six days thereafter—judgment was given against Norman for want of an answer. By the laws of this state, in action in a justice's court, the summons must require the defendant to appear and answer "at a time and place named

therein, not less than six nor more than twenty days from the date thereof." Code Or. 585.

After judgment and return of an execution against property unsatisfied, where the defendant has been personally arrested, the plaintiff may have an execution against his body as a matter of course. Code Or. 210. The undertaking of bail upon a provisional arrest is to the effect, that the defendant will render himself amenable to the process of the court during the pendency of the action and to such as may be issued to enforce the judgment given against him, if any. Id. 167. A person confined in jail on an execution in a civil action may be discharged therefrom at the end of ten days, if it appears to the satisfaction of a judge or two justices that he has no property liable to an execution. Id. 759, 760.

The question upon this point is, therefore, whether the plaintiff is entitled to any and what time after judgment wherein to charge the defendant in execution. There is no direct provision on the subject in the Code. Under Rev. St. N. Y. the period of three months was allowed, and it seems that if the ea. sa. or execution was sued out after that time, it was sufficient, if the defendant had not in the meantime obtained a supersedeas or discharge on account of the plaintiff's neglect. Minturn v. Phelps, 3 Johns. 446. It appears that, at common law, the practice was to sue out a ca. sa. or execution against the body at any time within a year from the rendition of the judgment, and if the defendant had been arrested provisionally, upon a capias ad respondendum he remained in custody of the sheriff or his bail until he was charged in execution. If the Code does not provide any particular time within which the plaintiff must take out execution against the body of the defendant, he must be allowed a reasonable time within which to do so—and certainly this is more than one day. Again, it appears from the foregoing citation from the Oregon Code, that the plaintiff cannot have execution against the body in any case until process against the property of the defendant has been returned unsatisfied in whole or in part. Now an execution in justice's court is returnable in thirty days from its date. Id. 594.

Taking these provisions of the Code together and construing them by the light of the common law, my conclusion is that the plaintiff has, until the return of the execution against the property, to take out execution against the body, and that in the meantime if the defendant has been arrested provisionally he must remain in the custody of the sheriff, or his bail, or satisfy the judgment. Nor does it appear that the plaintiff can be liable for false imprisonment for neglecting to give directions for defendant's discharge, when for any reason he has become entitled to it. The duty of procuring the discharge under such circumstances devolves on the de-

fendant. himself, and if for any cause he remains in custody after his imprisonment is legally at an end, it is his own fault rather than the plaintiff's. In such a case a simple application to the court from which the process issued would procure his discharge. Russell v. Champion, 9 Wend. 462.

But if the position assumed by counsel for plaintiff be conceded that the one day's imprisonment of the plaintiff, after the entry of judgment was unauthorized and the defendant is liable therefor, I am satisfied that a new trial should not be granted for that cause alone. A new trial will not be granted merely to enable the plaintiff to recover nominal damages, and when no just end would be obtained by it. Crary v. Sprague, 12 Wend. 47; Hyatt v. Wood, 3 Johns. 241; Fleming v. Gilbert, Id. 532; Hunt v. Burrell, 5 Johns. 138; Hopkins v. Grinnell, 28 Barb. 537; McLanahan v. Universal Ins. Co., 1 Pet. [26 U. S.] 170; Hill, New Trials, p. 51, § 14.

From the evidence I am satisfied that the plaintiff sustained no appreciable injury by reason of this day's imprisonment. At the time of his arrest he appears to have been engaged by the trip as a cook on first one, and then another of the steamers running from this port to the northward. After his discharge he appears to have remained here until after the June election, and was most probably in the employ of some parties interested in the result of it. He does not appear to have had any credit or business standing to be injured by either the arrest or detention. Upon the evidence at the trial a jury would not be warranted in giving the plaintiff anything beyond his actual damages for this one day's detention in prison. The indebtedness is admitted. It was for board furnished plaintiff at defendant's restaurant. The plaintiff has no right to complain if the defendant concluded from his broken promises and equivocal and suspicious conduct that the former intended to leave the country with the intent to avoid the payment of his debt. The plaintiff even refused at the last moment before the issuance of the writ and his intended departure on the steamer, to leave a watch he had as security for the debt, and when arrested, instead of attempting to apply this article of property in satisfaction of the demand, as he knew he could, he hastened to pawn it with a friend, to enable the latter to help him defeat the defendant in his attempt to recover the sum due him. In short, there is nothing in the case which tends to show that the defendant acted from malice; but on the contrary, the evidence is quite satisfactory that whether the arrest or subsequent imprisonment were justifiable or not, the defendant had probable cause to believe that the plaintiff was about to leave the country with intent to defraud him of his just dues. Upon this point the motion for a new trial must be denied.

A question was made by counsel for defendant that it did not appear that plaintiff was the person discharged on the writ of habeas corpus as alleged in his replication. Whether this be so or not is not material to the defendant. There is no proof that the plaintiff was discharged by his order as alleged in his answer.

In support of the second point counsel for plaintiff contends that section 106, subd. 1, p. 164, Code Or., under which this arrest was made is in conflict with the constitution of the state, and therefore void. The section in question provides that the defendant may be arrested "in an action for the recovery of money or damages on a cause of action arising out of contract when the defendant is not a resident of the state or is about to remove therefrom."

The constitution (article 1, subd. 19) declares: "There shall be no imprisonment for debt except in cases of fraud and absconding debtors." This clause of the constitution has never been construed by the supreme court of the state, and this court, in this case, must therefore give it such construction as to it appears proper.

It may be proper to remark at the outset, that as between the state constitution and the legislature of the state, the power of the latter is unlimited, except when expressly restrained by the former. Subdivision 19 of article 1 of the constitution is a limitation or restraint upon the power of the legislature, over a rightful subject of legislation, and therefore not to be construed so as to include cases beyond its plain and obvious meaning and purpose.

In U. S. v. Walsh [Case No. 16,635], I held that this clause of the constitution should be construed as if it read: "There shall be no imprisonment for debt arising upon contract express or implied, except," etc. In support of this conclusion it was then said: "The word debt is of very general use and has many shades of meaning. Looking to the origin and progress of the change in 'public opinion, which finally led to the abolition of imprisonment for debt, it is reasonable to presume that this provision in the state constitution would intend to prevent the useless and often cruel imprisonment of persons who, having honestly become indebted to others, are unable to pay as they undertook and promised. * * * General or abstract declarations in bills of rights are necessarily brief and comprehensive in their terms. When applied to the details of the varied affairs of life they must be construed with reference to the causes which produced them and the end sought to be obtained. A person who wilfully injures another in person, property or character, is liable therefor in damages. In some sense he may be called the debtor of the party injured, and the sum due for the injury a debt; but he is in fact a wrongdoer, a trespasser, and does not come within the reason of the rule which exempts an honest man from imprisonment, because he

is pecuniarily unable to pay what he has promised. For instance, a person who wrongfully beats his neighbor, kills his ox, or girdles his fruit trees, ought not to be considered in the same category as an unfortunate debtor."

With this general view of the intent and purpose of the constitution, I proceed to consider the alleged conflict between it and the statute under which the plaintiff was arrested.

For the plaintiff it is contended that absconding debtors and debtors about to remove from the state are not in the same category—not the same class of persons—that the latter description includes persons not within the purview of the first, and hence the conflict. Is the argument, or rather the assumption upon which it is founded, correct?

And first, to remove, as used in the Code, must be construed not to apply to a debtor who is about to depart from the state with a definite intention of returning within some reasonable time. Such a debtor may be said to be about to absent himself from the state, but not to remove from it. But a debtor who is about to leave the state without any definite purpose to return, is one who is about to remove from the state—to exchange this place for another.

Is such a debtor an absconding debtor? I think he is. True, he may not leave the state clandestinely or secretly, but he withdraws himself from it without fulfilling his obligations to his creditors resident in it—leaving his debts behind him unsatisfied. By such removal, whether public or secret, his creditors are deprived of the opportunity of realizing their demands by due process of law out of his present property or further accumulations, unless they should go to the trouble, expense and uncertainty of pursuing him into another jurisdiction. The power of the legislature to authorize and provide for arrest and imprisonment for debt is unlimited "in the case of absconding debtors." The phrase "absconding debtors," grammatically speaking, includes debtors who have actually absconded, as well as those who intend to do so. But after a debtor has left the state he is beyond the reach of its process, and for this reason, if no other, the power to imprison on this account is practically limited to the case of debtors still within the state. Yet it is not to be restrained to such debtors only as may be taken in the act of stepping across the state line, or on to a stage coach, steamboat or railway carriage, that will carry them beyond the process of the law in a few hours or minutes. There is no good reason why the law should be more tender concerning a debtor who is preparing to abscond—getting ready to remove without paying his debts—than one who is in the act of absconding. In either case the end to be obtained is the same. The right to imprison is a remedy

given to the creditor to enable him to prevent his debtor from permanently removing beyond the jurisdiction without his consent. But if the creditor's right to this remedy does not arise until the debtor is actually in the act of absconding, then in most cases it would prove to be too late to be of any service to him. In my judgment, from the moment of taking the first step toward the contemplated removal, without any definite intention of returning, the debtor becomes an absconding one; and the legislature has ample power to prevent the accomplishment of this purpose, by authorizing and providing for his arrest and imprisonment in such manner and upon such terms and conditions as it may think best. Prima facie, a debtor who removes from the state without the consent of his creditors, does so with the intent to hinder, delay or defraud them of their just debts. True, clandestine going is a particular circumstance from which, in an otherwise doubtful case, it may be reasonably inferred that the debtor is removing without an intent to return, and with the intent to hinder, delay or defraud his creditors. But if a removal by a debtor from the state can never amount to an absconding unless done or attempted in a clandestine or secret manner, then if a fraudulent debtor will only have the shrewdness and effrontery to remove openly, he may leave his creditors in the lurch with impunity.

This provisional arrest is only allowed to secure the appearance and answer of the debtor in the action for the recovery of the debt. If judgment is obtained against the debtor, and he has no property or effects liable to execution, he can procure his discharge and exemption from further imprisonment on this account. But, in the meantime, the creditor has had an opportunity of obtaining a personal judgment against the debtor, which is sufficient to establish his claim in any country in christendom to which the debtor may remove. And this is not all. Before the debtor can be discharged from imprisonment upon an execution to enforce such judgment, he may be compelled to apply money and valuables belonging to him, to its payment, which he would otherwise fraudulently and successfully conceal and secrete beyond the reach of an ordinary execution against property. But if a debtor is permitted to remove from the state with impunity without first satisfying his creditor, the latter is thereby deprived of these and other means given by the law of the state to enforce the collection of his debt from a reluctant or dishonest debtor. This being so, he is hindered and delayed in his debt if not ultimately defrauded out of it by such removal. His debtor has absconded—removed from the state without performing his promise to one of its citizens according to its legal obligation.

To prevent this injury to the creditor, the legislature, in the exercise of its unlimited

power to authorize imprisonment "in case of absconding debtors," has given him the right to cause the provisional arrest of his debtor about to remove from the state, and I do not find any reason for concluding that there is any repugnance or conflict between its act and the constitution, but the contrary.

Upon the construction of the constitution there can be no doubt but that the affidavit of the defendant was sufficient to justify the issuing of the writ of arrest. Indeed, it would be sufficient, it seems to me, even under the narrow and limited construction which counsel for plaintiff maintained should be given to the phrase—"in the case of absconding debtors." It alleges that Norman being indebted to Manciette upon account stated "is about to leave the state of Oregon with intent to delay, hinder and defraud his creditors." The affidavit for arrest need not pursue the language of the Code. It is sufficient if it contains terms which are substantially equivalent to those of the statute. To leave the state is equivalent to remove from it. Primarily, both of these terms import a withdrawing therefrom without a mind to return. But this affidavit goes farther and alleges that such leaving or removal is about to take place with intent to "hinder, delay and defraud creditors." That this expression is equivalent to an allegation that a debtor is about to abscond from the state, in any or the worst sense that can be given to that term, is to my mind very plain. Whether the debtor would have left or absconded secretly or openly if the creditor had not interposed and caused his arrest, could not be known to the creditor beforehand, when he made this affidavit. Nor was it a material question in what manner he was about to leave or abscond, but rather for what purpose or with what intention. The manner of attempting the removal or accomplishing it is only material as tending to show the object of it. Prima facie, a removal from the state by a debtor, without a mind to return, is an absconding—a permanent withdrawing from the state, while his pecuniary obligations to his creditors are unperformed, to their prejudice, hindrance and delay.

The affidavit upon which the defendant caused the arrest of the plaintiff being regular and sufficient upon its face, this action for false imprisonment will not lie. In such case there is no trespass; but if the arrest was wrongful or false in fact—procured upon a false allegation, the remedy of the party is an action for malicious prosecution, in which he must allege and prove both malice and want of probable cause. In this action the question of probable cause could only have been material in mitigation of damages in case the arrest had been held to be a trespass because of the insufficiency of the affidavit. Sleight v. Ogle, 4 E. D. Smith, 445. In this case if the action was for malicious prosecution, I should feel warranted in declaring upon the evidence adduced at the trial that their was neither malice or want of probable cause.

Motion for new trial denied.