# MARGARITA RIVERA
## *v.*
# MANUEL CADIERNO.

Law, No. 432.

1. The action being for damages for an alleged breach of promise of marriage, the court will not, before judgment, order the arrest of a defendant, resident of the jurisdiction, who is not shown to intend leaving the same; who has not seduced plaintiff; who is not alleged to be concealing his property, nor to be insolvent, nor charged with fraud (unless the breach of promise can be so considered).

2. The Porto Rican law of civil arrest is not in contravention of the organic act nor of any act of Congress.

3. The Constitution governs Congress, and the laws enacted by Congress are the supreme law of the land in Porto Rico, whenever applicable.

4. An action for damages for wilful injury to person and character (no seduction having been alleged) as the consequence of a failure to carry out a promise of marriage is an action *ex contractu* for damages for breach of the contract of marriage.

5. The issuing of an order of arrest in a civil case is discretionary with the court.

6. Under the Porto Rican statute the plaintiff in judgment cannot take the body of defendant in execution.

7. Nor can the bondsmen of defendant be compelled to pay the judgment if the defendant does not absent himself after judgment.

Opinion filed January 18, 1907.

*Francis H. Dexter, Esq.,* attorney for plaintiff.

Rivera v. Cadierno.

*Henry F. Hord, Esq.,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

This is a suit at law for a breach of promise of marriage, with damages laid in the sum of $10,000. It is before the court at the present time on the application of the plaintiff for an order of arrest against the defendant under the Code.

The plaintiff alleges that she is an unmarried woman, a resident and citizen of Porto Rico, and fully competent to enter into a contract of marriage; that the defendant is a subject of the King of Spain and resident of Porto Rico, and that, until the committing of the grievance hereinafter mentioned, he also was unmarried and also fully competent to enter into the contract of marriage. Plaintiff further alleges that, beginning with the year 1903, defendant, as a lover, began to court and pay her respectful attention, which was constant until the month of June, 1906, when he departed upon a visit to Spain. That defendant, shortly after the beginning of the courtship, requested plaintiff to marry him, which, in consideration of the premises, she agreed to, and has ever since been ready and willing to marry him. That thereupon, in proof of their mutual respect, love, and agreement, and his promise, he gave her an engagement ring, and it was understood between the parties that they were to be married within a reasonable time.

Plaintiff then alleges that defendant, when on this trip to Spain, and in the month of July, 1906, in the province of Asturias, not regarding his said promise and obligation, "and contriving and fraudulently intending craftily and subtly to deceive and injure plaintiff, and to wound and mortify her in her feelings and person, and to injure her in her character," did,

without the knowledge of plaintiff, wrongfully and wilfully marry another person, to wit, one Miss Pilar Valledor Otero. All of which was contrary to his promise and obligations to the plaintiff.

From an examination of the files of the court, it is ascertained that in two previous cases, former judges, apparently without question, on a proper application therefor under the Code, issue orders of arrest in civil cases.

The complaint makes no allegation that the defendant is insolvent, nor that he is concealing or attempting to conceal the whole or any portion of his property, or that he is about to leave the jurisdiction; nor does it charge seduction of the plaintiff, or the commission of any other wrong save the failure to keep his promise; nor plead special damages save as aforesaid; nor state any liquidated demand; but, on the contrary, so far as the court can ascertain from the pleadings or from statements of counsel during the hearing, both parties are respectable people of good social standing, unless the alleged breach of this promise to marry can be said to affect the good standing of the defendant, and therefore, in the language of counsel for defendant, "The court is asked to order the arrest of a person who is a resident of the jurisdiction; who has no intention of leaving the jurisdiction; who had not seduced the plaintiff; who is not charged with perpetrating a fraud (unless the alleged breach of this alleged promise to marry is a fraud); who is not concealing his property; and who is solvent."

The applicable provision of the law is to be found in the Civil Code of 1904; the material portion of which reads as follows:

"Section 144. The defendant may be arrested as hereinafter prescribed, in the following cases: (1) In an action for the recovery of money or damages; in a cause of action arising upon a contract, express or implied, where the defendant is about to de-

part from the island of Porto Rico, with intent to defraud his creditors; or when the action is for wilful injury to person, to character, or to property, knowing the property to belong to another." The remainder of the subheads of the section are not material here.

Section 145 of the Code provides: "An order for the arrest of the defendant must be obtained from a judge of the court in which the action is brought." Section 146 provides: "The order may be made whenever it appears to the judge, by the affidavit of the plaintiff, or some other person, that a sufficient cause of action exists, and that the case is one of those mentioned in § 144." Section 147 provides: "Before making the order, the judge must require a written undertaking on the part of the plaintiff, with sureties in an amount to be fixed by the judge, which must be at least $500, to the effect that the plaintiff will pay all costs which may be adjudged to the defendant, and all damages which he may sustain by reason of the arrest, if the same be wrongful or without sufficient cause, not exceeding the sum specified in the undertaking." Section 148 provides: "The order may be made at the time of the issuing of the summons, or at any time afterwards, before judgment. It must require the marshal of the district where the defendant may be found, forthwith to arrest him, and hold him to bail in a specified sum, and to return the order, at a time therein mentioned, to the secretary of the court in which the action is pending."

Then follow many sections providing for mode of service, keeping of defendant, bailing the defendant, how sureties may surrender defendant, manner of qualifying bail, etc., etc.

The belief is widespread among the people of the United States, and, perhaps, in a general way, it is believed by many members of the bar who have not given attention to the matter,

that there is no such thing, in a general sense, as imprisonment for debt or imprisonment in civil actions in the United States, and that there is, in fact, something in the Constitution preventing it. Without question, the idea of imprisoning for debt is abhorrent to a vast majority of the American people. See Ex parte Dexter, 1 Hayw. & H. 191, Fed. Cas. No. 3,854. The fact is, however, that there is no provision in the Federal Constitution relating to the subject at all. There is a national statute (§ 990, Rev. Stat., U. S. Comp. Stat. 1901, p. 709) which provides that no person shall be imprisoned for debt in any state on process from a United States court if imprisonment for debt has been abolished in such state, and that all modifications, conditions, and restrictions as to that subject, provided by the laws of any state, shall be applicable to process from courts of the United States. It therefore appears that Congress has left this question, certainly in so far as states are concerned, to the states themselves. Low v. Durfee, 5 Fed. 256; Cooper v. Dungler, 4 McLean, 257, Fed. Cas. No. 3,192; 16 Am. & Eng. Enc. Law, 2d ed. p. 16.

Imprisonment for debt as obtaining in England previous to the coming of the early colonists to the original thirteen states, and even in the early colonists themselves, had become so odious that it was abolished or modified by constitutional provision as soon as the colonies had achieved independence and constitutions were adopted. In fact, it is historical that many of the early colonists, especially of the Carolinas and Georgia, were genteel people whose freedom from debt imprisonment in English "Marshalseas" had been purchased by their friends, or who had been released from such bondage by direct order in the nature of a pardon by the King.

As showing that public sentiment in the nation is still over-

whelmingly against the idea of imprisonment for debt or in civil actions, it may be stated that it has now been abolished absolutely in Alabama, Georgia, Maryland, Mississippi, Missouri, Tennessee, and in all the remaining continental territories save Alaska, and probably in the state of Texas; and has been abolished save in cases of fraud, in Arkansas, Florida, Indiana, Iowa, Kansas, Minnesota, Nebraska, Nevada, North Carolina, Ohio, Oregon, Wyoming, and other states. It has been greatly restricted in Michigan, New Jersey, South Dakota, Wisconsin, Colorado, Illinois, Kentucky, North Dakota, Pennsylvania, Rhode Island, and Vermont. Nevertheless, it has been repeatedly held that statutes regulating the right of imprisonment for debt, and in civil actions, save where abolished, are constitutional and are not in contravention of any of the clauses of state or national organic law. 16 Am. & Eng. Enc. Law, 2d ed. p. 16; Norman v. Manciette, 1 Sawy. 484, Fed. Cas. No. 10,300; Ex parte Hardy, 68 Ala. 303; Ex parte Bergman, 18 Nev. 331, 4 Pac. 209.

The question here is: Are the foregoing provisions of the Code of Porto Rico constitutional and proper enactments, and are the allegations here sufficient to warrant the issuing of the order of arrest applied for? There is nothing in the organic act of Porto Rico, nor in any act of Congress applicable in the premises, that prevents the local assembly from passing this act, and its general legislative powers apply "to all matters of a legislative character not locally inapplicable." Sec. 32, organic act, 31 Stat. at L. 77, chap. 191.

The Constitution governs Congress, and the laws enacted by Congress are the supreme law of the land in Porto Rico whenever applicable, because it is so provided and it has been held by the courts that: "The statute of Congress organizing a ter-

ritory within the jurisdiction of the United States is the fundamental law of such territory, and, as such, binding upon the territorial authorities;" and that: "Subject to the limitations expressly or by implication imposed by the Constitution, Congress has full and complete authority over a territory, and may directly legislate for the government thereof. It may declare a valid enactment of the territorial legislature void or a void enactment valid, although it reserved in the organic act no such power." First Nat. Bank v. Yankton County, 101 U. S. 129, 25 L. ed. 1046.

A remarkable fact as tending to show that Congress itself does not wholly discountenance this sort of legislation is that in June, 1900, when passing a code of civil procedure for Alaska, it incorporated a chapter on "Arrest and Bail" (31 Stat. at L. 347, et seq. chap. 786) which is practically a copy of the modern codes on this subject in several of the states. The Code of Porto Rico above quoted is almost similar to this Alaskan act in the material provisions to be considered here, with this difference, that § 144 aforesaid provides for the arrest "when the action is for wilful injury to person (or) to character." While the provision for Alaska is that the arrest can be made "when the action is for an injury to person" leaving out the words, "to character." This provision is probably a significant one, because: "By the terms of the various constitutional and statutory provisions of the several states, the defendant cannot be arrested in an action on contract, except where he has been guilty of fraud." 16 Am. & Eng. Enc. Law, 2d ed. p. 17, note 3 and cases cited.

It is also apparently well settled that obligations arising in tort or *ex delicto* are not debts within the meaning of the constitutional inhibitory provisions of the several states, and that

therefore orders of arrest or executions against the person may competently issue in the case of claims founded upon torts, when not specifically prohibited.   See cases cited in note 4, p. 17, and note 3, p. 19, of Am. & Eng. Enc. Law, vol. 16, 2d ed., supra.

In a note (5) on p. 18 of this same work, a large number of cases are cited as supporting the doctrine that:   "Where the plaintiff has an election to bring his action either *ex contractu* or *ex delicto,* the arrest of the defendant being prohibited in the former 'case and allowed in the latter, the better doctrine seems to be that he cannot subject the defendant to arrest and imprisonment by electing to sue in tort.   But where the action is to recover damages for a distinct tort, although one growing out of the existence of a contract, the plaintiff, by disaffirming the contract, and proceeding against the defendant for his fraudulent or tortious conduct, may render him liable to arrest." Schermerhorn v. Jones, 1 How. Pr. 147.   "The right of arrest is not affected by the mere fact that, in an action founded in tort, a contract is alleged by way of inducement."   McDuffie v. Beddoe, 7 Hill, 578; Cotton v. Sharpstein, 14 Wis. 226, 80 Am. Dec. 744.

A common provision of the statutes, where it is permitted, is that the defendant may be arrested in an action to recover damages for "injury to person or character," and under these provisions it has been held that the defendant may be arrested in an action for seduction, for crim. con., .for assault and battery, for malicious prosecution, false imprisonment, libel or slander, etc., etc. 16 Am. & Eng. Enc. Law, 2d ed. pp. 20, 21, subhead, "Injuries to Person or Character," and cases cited. The provisions of the local Code above cited appear to be identical with the provisions of the statutes thus referred to.

A breach of promise to marry is a breach of contract; and, in

Rivera v. Cadierno.

the absence of any charge of fraud, the imprisonment of the defendant in an action for such breach is within the constitutional inhibition against imprisonment for debt. Re Tyson, 32 Mich. 262; Perry v. Orr, 35 N. J. L. 295.

In New York, where there is, or at least was, no constitutional provision against imprisonment in civil cases, it is, or was, provided by statute that the defendant may be arrested in an action for breach of promise to marry. Code Civ. Proc. § 549; Durand v. Durand, 2 Sweeny, 315; 16 Am. & Eng. Enc. Law, 2d ed. p. 32, note 2.

Plaintiff's counsel, during the hearing of the application, refused repeatedly, on request of defendant's counsel, to state whether he considered this particular action one based upon a contract or sounding in tort, but insisted that it was a statutory proceeding under the local Code. Notwithstanding this fact, a careful examination of the complaint, and in view of the fact that Porto Rico has no local Constitution other than the organic act, we are constrained to hold that the proceeding is an ordinary action *ex contractu* for damages for the breach of a contract of marriage, even though the injury is unquestionably a wilful one "to her person and character."

The affidavit in support of the application for the order of arrest sets out that the parties were engaged for about three years, and that the whole community was cognizant of such fact, and believed they were going to be married, and therefore we can appreciate that it is no light matter to plaintiff to have defendant, without explanation, go off to Spain, and, contrary to his promise to her, and her rightful expectations in the premises, marry someone else. But notwithstanding this, if the provision of the Code aforesaid, permitting arrest "when the action is for wilful injury to person or character," is authorized by

Rivera v. Cadierno.

Congress, for it is admitted there is no constitutional provision either authorizing or prohibiting such a statute, then it can make no difference whether the action is based on a contract or sounds in tort. The word "may," according to its ordinary construction, is permissive, and should receive that interpretation unless such construction would be obviously repugnant to the intention of the legislature. Medbury v. Swan, 46 N. Y. 200; People ex rel. Comstock v. Syracuse, 59 Hun, 258, 12 N. Y. Supp. 890, Affirmed in 128 N. Y. 632, 29 N. E. 146.

There is nothing in the act in question that indicates that the word in this particular statute is anything save discretionary with the judge, and, in fact, in this class of cases it has been held to be so. Section 143 of the local Code provides: "No person can be arrested in a civil action, except as prescribed in this Code." And it will be seen that the beginning of § 144, supra, states: "The defendant may be arrested, as hereinafter prescribed," etc. Therefore, it seems that the matter of ordering the arrest, even in a case where the statute unquestionably warrants it and the allegations for the arrest are sufficient, rests in the discretion of the court.

"A statute providing that the defendant in a civil action may be arrested in certain cases does not entitle the plaintiff to an order of arrest in a proper case as a matter of right, but the granting or refusing of the order is a matter within the discretion of the judge to whom the application is made. Re Bergen, 2 Hughes, 513, Fed. Cas. No. 1,338; Lapeous v. Hart, 9 How. Pr. 541; Davis v. Scott, 15 Abb. Pr. 127; National Bank v. Temple, 39 How. Pr. 432." 16 Am. & Eng. Enc. Law, 2d ed. p. 36. And that work continues by stating: "It follows that the manner in which the judge has exercised this discretion is not subject to review. Lapeous v. Hart, supra."

Rivera v. Cadierno.

It seems, therefore, that the abhorrence which subsists in the minds of American citizens against the idea of imprisonment for debt has in contemplation more particularly the cases of honest debtors who are unable to pay money in accordance with contracts which they honestly made, and that it does not refer to cases where the debt was fraudulently contracted or the liability incurred through some trick, scheme, or misrepresentation, nor to cases where a wilful and wrongful injury is done to the person or character of another. And for this reason it seems that many of the states, under proper restrictions, permit arrest and bail in what otherwise is a plain civil case, and trenches perhaps at times closely upon the rule and the sentiment against imprisonment for debt.

We also confess to a feeling of odium towards the idea of imprisoning anybody simply because damages are claimed against him, or because he unfortunately owes money, and we cannot see the wisdom of arresting a person in any sort of a civil action where no fraud is charged, and putting him in jail, to remain there, if he should fail to give bond, for the period of six months, as is provided in § 2 of the act of March 9, 1905, of this island, Sess. Laws P. R. 1905, p. 136. It would simply amount to this,—that in any sort of a civil action under this statute where an ordinary attachment would be warranted, or where the plaintiff claims a wilful injury to person or character, or to property even, he can make an affidavit and put the defendant in jail if the latter cannot give bond, before plaintiff actually proves that the defendant is guilty of anything. He may thereafter even fail in his suit and the defendant has no remedy save to sue him on the bond required to be taken before the order issues, and this certainly looks like trifling with the liberty of a citizen. A plaintiff cannot take the defendant's body in execu-

Rivera v. Cadierno.

tion after judgment, nor can he force the bondsmen to pay the debt, so it would appear that the statute at best only enables plaintiffs to vent their spite on defendants. It goes without saying that a better mode for the legislature, if they desire to give that power to plaintiffs, would be to make the act a crime and have the public prosecute for it, where a trial by jury could be had.

In this particular case, the plaintiff sues for $10,000 damages. The natural feeling of the court would be, if it believes her cause of action to be just, to fix a bond in $10,000, and it might well be that defendant could not give such a bond, and that plaintiff may never recover any damages against him. Certain it is that she cannot force him to marry her, as he is married to somebody else.

These reasons are stated with a view to justifying the dislike which the court has for this sort of legislation, and yet the court is powerless to disobey the law if the law warrants this sort of procedure, as it certainly appears to. The only redeeming feature we see in the whole matter is that the statute is not mandatory. It states the defendant may be arrested, and we have shown above that it is discretionary with the court.

Under the circumstances, and particularly because of the absence of allegations in the declaration showing real reason for it, the court feels constrained to deny the order for arrest at this time, but reserves the right to issue it, should it be shown that defendant attempts to dispose of his property with intent to impede plaintiff, or should attempt to leave the jurisdiction with the same intent, or otherwise attempt to thwart plaintiff in the collection of any judgment she may obtain.