## VANCE v. BOYNTON.

Where the purchasers from a common vendor are equally innocent, or equally in fault, the first purchaser is entitled to the goods.

Whether a sale of personal property is void as to subsequent purchasers, must be determined under the fifteenth section of the Statute of Frauds.

The question of delivery and change of possession, under the fifteenth section, is a mixed question of law and fact; but as to what shall constitute a delivery is a question of law alone.

The question of the intention of the parties should not be submitted to the jury.

Where H., the owner of barley, which he has piled up in his corral, sells five hundred sacks thereof to V., who has it separated, marked "V.," and piled up in another part of the corral, and employs a third person to take care of the same for him, and H. afterwards sells and delivers the same to B.: *Held*, that B. was entitled to the property, the sale from H. to V. not being followed by an actual and continued change of possession.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

This was an action to recover the value of five hundred sacks of barley, alleged to belong to the plaintiff, and converted to his own use by the defendant. The facts were substantially these: One Haggett grew this, with other barley, upon his farm, and sold the same to plaintiff on the twenty-fifth of August, 1856. The sacks were marked "V.," were counted, separated from other sacks of barley, and placed in a position by themselves in Haggett's corrall, which was used by H. as a storehouse for his

grain. The plaintiff at the same time employed one Chase to take care of the grain for five dollars per month. Chase was about the corral and looked after the barley for some two to four weeks, when he left and went to work at another place some eight or ten miles distant. On the fifteenth or sixteenth of October, 1856, Haggett delivered at Wing's storehouse five hundred and ninety-five sacks of barley, including the five hundred sacks sold plaintiff. Haggett took a warehouse-receipt for the entire lot of five hundred and ninety-five sacks, and some time afterwards sold the barley to defendant, who then took a warehouse-receipt in his own name. The barley remained in the warehouse until the middle of February, 1857, when it was removed by defendant. Chase, the agent of plaintiff, saw Haggett when hauling away the last load of the barley, and about one week afterwards, also saw the sacks marked " V." at the warehouse. A verdict and judgment were had for the plaintiff, and defendant appealed.

On the trial, the defendant's counsel asked the Court to charge the jury, " If there was a sale from Haggett to Vance, then the sale was fraudulent and void as to defendant as a purchaser, unless the delivery was immediate upon the sale and followed by an actual and continued change of possession."

This the Court refused, and defendant excepted. The Court then, of its own motion, instructed the jury as follows, under the exception of defendant:

" That the first thing the jury were to ascertain and determine was the fact, whether or not Haggett sold and delivered the barley to Vance. That if for a valuable consideration the grain was sold to Vance, the sacks separated, counted, and piled up by themselves, there was a sufficient delivery as between Haggett and Vance to pass the title to Vance. That upon the question of delivery as between Vance and the creditors or subsequent purchasers of Haggett, and also as to there being a continued change of possession, these were matters of fact for them to pass upon, since they were to determine the fraudulent intent. If they found there was not an actual delivery and continued change, the sale was made by the law itself fraudulent and void as to subsequent purchasers in good faith; that the question was rather what was the motive of Vance than what was the motive of his vendor. If Vance bought in good faith and had no knowledge of the purpose of the vendor, the sale was good, though Haggett might have intended to defraud subsequent purchasers."

The Court further instructed the jury, under the exception of defendant's counsel:

" That the question whether or not the barley was delivered by Haggett to Vance, was a question for the jury to decide. But if there was such a delivery by Haggett to Vance, and

such a taking of the possession by Vance as a man would ordinarily take of such property sold to him, then the title to the grain passed to Vance; and if purchased by Vance in good faith, then he could not be deprived of his right to it by a subsequent taking of it by Haggett unless he consented or connived at such taking. That the question was not whether Haggett acted in bad faith, but whether the sale from Haggett to Vance was to be considered fraudulent and void as to Boynton as a subsequent purchaser, because of any fraudulent intent on the part of Vance—that if Vance became the owner of the grain by purchase from Haggett, and continued in possession until it was taken away by Haggett against his consent, he could not be deprived of his right to the grain by the subsequent sale and delivery of it by Haggett to Boynton."

*John Currey* for Appellant.

This action was brought by the plaintiff and respondent against the defendant and appellant, for the alleged taking and carrying away of five hundred sacks of barley of plaintiff, which plaintiff alleges was worth one thousand two hundred dollars.

The answer of the defendant puts at issue every material allegation of plaintiff's complaint, and also sets up title in himself of the barley mentioned in the complaint.

The action was tried in Solano county, at the March term of the District Court, in the year 1857, and a verdict and judgment rendered in favor of plaintiff against defendant for eight hundred and seventy-five dollars damages.

A new trial was applied for in due time by the defendant, and the motion therefor was denied at the term of the District Court held in said county in June, 1857.

From the judgment entered, and from the order refusing the new trial applied for by defendant, the defendant appealed to the Supreme Court.

The act concerning fraudulent conveyances and contracts, Comp. Laws, 201, § 15, declares, that every sale made by the vendor of goods and chattels in his possession or under his control, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, shall be conclusive evidence of fraud, as against subsequent purchasers in good faith.

The Court below was requested, in writing, by appellant's counsel, to instruct the jury substantially in the language of the fifteenth section of the act above cited. This request was refused, and the defendant's counsel duly excepted

The question presented to the jury by the evidence in the case, involved, directly and especially, the point as to the effect of the want of a continued and exclusive change of the possession of the barley sold by Haggett, to the plaintiff, when the rights of

the defendant, Boynton, as the subsequent purchaser of the same barley from Haggett, were to be considered and protected, if by law entitled to protection.

The Court below seemed to take especial pains to keep from the consideration of the jury the question of the legal fraud, to a subsequent purchaser in good faith, arising from a want of an actual and continued change of possession of the property sold.

This is apparent, not only from the denial of the instruction requested, but from the instructions given upon an abstract point, not really of the case, and which effectually led the jury from the real issue to be passed upon by them. 1 Smith's Lead. Cases, and the Kentucky decisions therein cited, pages 52, 53, and 54.

The persons who can take the objection, that a sale was made with a fraudulent intent, are enumerated in section twenty of the act above referred to. A subsequent purchaser is not of the number of such persons.

A conveyance or sale of goods or chattels, made with the intent to hinder, delay, or defraud creditors or other persons, of their lawful suits, damages, forfeitures, debts, or demands, as against the persons hindered, delayed, or defrauded, is, by said section twenty, declared void.

The question of fraudulent intent could not arise in a contest between the prior and subsequent vendee of the same vendor, in respect to the first sale; and hence, to charge the jury in substance, that, in determining the question of an actual delivery and a continued change of possession of the property sold, the intent or motive of either Haggett or Vance was to be considered and determined, was not only calculated to mislead the jury, but, in the case at bar, involving the rights of the appellant as the subsequent purchaser of the same barley, was palpably erroneous as matter of law.

The motives of Haggett or Vance, at the time of their contract of sale and purchase, could not properly enter into the controversy between the plaintiff and defendant, because the defendant was not of the class of persons who could object that such sale was made with intent to hinder, delay, or defraud; and the direction by the Court to the jury, to consider and determine the motive of Vance in that transaction, with the specific instruction, that, "if Vance bought in good faith, and had no knowledge of the purpose of the vendor, the sale was good, though Haggett might have intended to defraud subsequent purchasers," was in effect an instruction to the jury to determine the case, as they might first ascertain whether the motive of Vance, at the time he purchased the barley of Haggett, was honest or dishonest. 1 Smith's Lead. Cases and N. Y. decisions therein, cited 60–63; Jennings v. Carter, 2 Wend., 446; Diover

v. McLaughlin, ib., 596; 1 Am. Lead. Cases, 75, 76; Hastings v. Belknap, 1 Denio, 198.

The jury might have found a verdict in favor of the defendant, if they had not been enjoined by the Court that the question for them to decide was, whether the sale from Haggett to Vance was to be considered fraudulent and void as to Boynton, as a subsequent purchaser, because of any fraudulent intent on the part of Vance; and that the verdict would have been for the defendant, if the question of a want of an actual and continued change of possession of the barley, from the time of the sale to Vance until the sale two months after to Boynton by the same vendor, had been fairly submitted to the jury, there cannot be, in view of the evidence, any doubt.

As between vendor and vendee, a sale may be effectual to pass the property sold, without actual delivery. "When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the risk of accident to the goods vests in the buyer. 2 Kent's Com., 492; Tarling v. Baxter, 6 Barn. & Cres., 360.

But when the interests of creditors or subsequent purchasers are concerned, and are to be considered, the rule of law is inflexible, that there must be an actual delivery of the property sold, and such delivery must be followed by an actual and continued change of possession.

The existence of a fraudulent intent on the part of Vance was not necessary to be found, in order to divest him of a right to the barley, and to invest the appellant with right and title thereto by virtue of the purchase made by him of Haggett. Even if Vance purchased the barley in good faith, and if Haggett sold to Boynton without the consent of Vance, still, if the barley was left in Haggett's corral, and apparently under the control of Haggett, it would not be just, nor in accordance with the law, that the appellant, a subsequent purchaser, should suffer by the fraud which the plaintiff's misplaced confidence gave Haggett the opportunity to practice.

The evidence deduced from the witnesses, for the plaintiff as well as the defendant, shows, that the barley was permitted to remain stored in Haggett's corral, where it was at the time of the plaintiff's purchase, and where Haggett had his own grain stored for nearly two months after the sale to Vance. Such being the evidence, the question was at once directly presented, whether there was such a delivery, and such an actual and continued change of possession, of the barley, as would satisfy the demands of the law, and cast the consequences of Haggett's actual fraud on the appellant, as a subsequent purchaser. But the point as to an immediate delivery, and an actual and continued change

of possession of the barley, was kept almost entirely out of view, under the directions and instructions of the Court. By the course of ruling and charge to the jury adopted, the appellant believes he has unjustly suffered the loss of his case in the Court below.

In Chitty on Contracts, 414, it is said: "It seems that the change of possession necessary to rebut the inference of an intention to defraud creditors must be substantial, *bona fide*, and exclusive; and consequently, that the sale or assignment will be considered fraudulent and void, and the assignor's possession colorable, if the goods be left upon the premises of the assignor, and in his apparent disposal and order, although the vendee or his servant enter upon the premises, and be also in possession of the goods." Paget *v.* Perchard, 1 Esp. R., 205; Wordall *v.* Smith, 1 Camp. R., 333; Hamilton *v.* Russell, 1 Cranch R., 310; Collins *v.* Brush, 9 Wend., R., 198; Doane *v.* Eddy, 16 Wend., R., 523.

The evidence produced on the trial was ample in respect to the barley remaining in Haggett's corral with his grain until about the middle of October, when it was removed, and sold to Boynton.

The authorities cited above apply to the point here made.

The grounds herein presented as assignments of error were made before the Court below, on the motion for a new trial; and the refusal to grant a new trial for the reasons stated, and because the verdict was contrary to the evidence produced on the trial, the appellant here assigns as another and repeated error of the Court below.

*Whitman & Wells* for Respondent.

The point of the case is—did the Judge below err in his charge to the jury? It is not proposed to review the points made by appellant, *seriatim*, as they are all more or less involved, the one in the other; and one general review of the testimony and charge of the Court, will present the point of the case as above stated. Vance and Boynton both claimed to be innocent purchasers. Of the fraud of Haggett toward one or the other, and perhaps both, there can be no doubt.

The evidence of John W. Chase, with regard to Vance's purchase, shows, conclusively, that there was an immediate delivery and an actual and continued change of possession, until the possession of Vance was intruded upon by Haggett, without the connivance of Vance. The sale and subsequent possession are neither of them clouded by any badge of fraud, but present the ordinary features of a common commercial transaction. So, it must be admitted, does the purchase subsequently of Boyton, save the one fact, which the record discloses—that a lower price was paid by Boynton than the article was actually worth in the market, which, as grain is a cash article, and always has a value

as fixed as gold and silver themselves, is decidedly significant, as regards the good faith of Boynton in the transaction.

Admitting, for the purposes of this argument, that Vance and Boyton were both equally innocent purchasers, and one must unfortunately suffer, which of the two shall it be?—the prior or subsequent purchaser? The law has settled that question. *Prior est in tempore, potior est in jure.*

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is a case between two purchasers of the same property, from the same fraudulent vendor; and the only question regards the person who must sustain the loss. If both purchasers were *equally* in fault, or *equally* innocent, then the *first* purchaser was entitled to the property. It is a case arising under our Statute of Frauds. Com. L., 199.

The first section of the act relates solely to fraudulent conveyances of, or charges upon, *lands*, or the rents and profits thereof, made or created with *intent* to defraud *purchasers*, prior or subsequent. The twentieth section relates to conveyances, and assignments of any estate in lands, or goods, with *intent* to defraud creditors or others, of their lawful suits, damages, forfeitures, debts, or demands. The first section only relates to *purchasers*, and the twentieth to creditors and others, sustaining substantially the same relation to the vendor, and *not* to purchasers.

From the provisions of these sections, a sale of *land* made with *intent* to defraud purchasers or creditors, would be void. But there is nothing in *these* provisions that would make a sale of personal property, with intent to defraud *subsequent purchasers, void as to them.*

We must then look to the fifteenth section, as the only provision in the act applicable to this case. By that section, unless the sale " be accompanied by an immediate delivery, and be followed by an actual and continued change of possession," it will be void, as against *subsequent* purchasers in good faith.

If, then, a sale of chattels be made with the intent, both on the part of the vendor and vendee, to defraud subsequent *bona fide* purchasers, the same would not be void under the *statute*, as against such purchaser, unless the sale was *not* accompanied with the delivery, and continued change of possession required by the fifteenth section. Where the sale is accompanied with such delivery and change of possession, it is difficult to see how a subsequent purchaser could be injured without carelessness or fault on his part. When the delivery and change of possession exist, the subsequent purchaser has notice, and if he purchase of the original vendor, *then out of possession*, there is nothing in the statute to give him relief.

It would then seem clear, that the question of *intention* can have nothing to do with sales made void by the fifteenth section. That section makes certain facts conclusive evidence of fraud. These facts are not made up of intention, in whole or in part. The intention of the vendor and vendee, or either of them, constitute no part of this " conclusive evidence of fraud." The simple fact, and that fact alone, that the vendor remains in possession of the thing sold, makes the sale void.

In this case, there was no question of intention for the jury to determine. A question of intention, in the nature of the case, must be a question of fact, and if so, must be determined, in all cases, by the jury. But this question of intention arises under sections first and twentieth, but not under section fifteen.

The question of delivery and change of possession, under the fifteenth section, is a mixed question of law and fact. What are the circumstances existing in the particular case, is a question of fact for the jury. But, conceding their existence, whether they constitute the immediate delivery, and the actual and continued change of possession required by the statute, is solely a question of law for the Court. When the facts are conceded, or clearly proved, there is nothing for the jury to determine.

In this case, there is no conflict of testimony, and the main substantial facts are clearly established.

We have already held, that a vendor having possession of the property as *clerk*, or as *warehouseman* of the vendee, rendered the sale fraudulent. 4 Cal. Rep., 289; Stewart *v.* Scannell, July T., 1857.

The mere change of the *capacity* in which the vendor acts while in possession of the goods, will not save the sale from the provisions of the statute.

The object of the fifteenth section of the act was to adopt a plain, simple, and conclusive test. If the parties be held strictly to change the possession of the property sold, it is the greatest possible check upon fraud. The fraudulent vendor cannot enjoy the benefit of his fraud, if the statute be rigidly enforced. There can exist no motive for fraud, when nothing can be gained by it.

The possession of property is necessary to its beneficial use; and when the fraudulent vendor must deprive himself of its possession and use, to comply with the statute, there can be no adequate motive for the sale.

In this case, the apparent ownership of the property was left in, Haggett by the act of the plaintiff. The barley was left where it would have been had it not been sold. The mere change from one part of the corral to another, did not destroy this apparent ownership, so long as the corral itself remained in the possession of Haggett. No one, not acquainted with the trade, would have been able to know the real owner. The agent

of plaintiff looked after the property at intervals, but never changed its position, and suffered Haggett to remove and store it as his own.

This case differs very much from some former cases, where the property was found, and left in the possession of a warehouse-man. The delivery of possession was sufficient, and the change of possession would have been good, if the property had been on storage at the time of sale. In such case, the warehouseman becomes the agent of the purchaser, and the property is, in no sense, in the possession of the vendor.

We think, in this case, the change of possession was not actual and continued. The rule is well laid down in Chitty on Contracts, seventh Am. Ed., 414 :

" It seems that the change of possession necessary to rebut the inference of an intention to defraud creditors, must be *substantial*, *bona fide, and exclusive ;* and consequently, that the sale or assignment will be considered fraudulent and void, and the assignor's possession colorable, if the goods be left upon the premises of the assignor, and in his apparent disposal or order, although the vendee or his servant enter upon the premises, and also be in possession of the goods."

The instructions of the Court below, in submitting the question of intention to the jury, were erroneous.

Judgment reversed, new trial granted, and cause remanded.