[No. 1196.]

## EX PARTE WILLIAM BERGMAN.

HABEAS CORPUS—ARREST AND BAIL—FRAUDULENT DISPOSITION OF PROPERTY—SECOND ACTION—JURISDICTION.—Petitioner was sued for malpractice. The plaintiff obtained judgment. He subsequently commenced a second action setting forth the former judgment and, as grounds for a judgment against the person of petitioner, alleged that petitioner had, prior to the former judgment, without his knowledge, fraudulently disposed of and removed his property without this state with intent to defraud his creditors: *Held*, that under subdivision five, of the act relating to arrest and bail, the district court had jurisdiction to arrest and detain petitioner in the second action.

IDEM—MERGER OF FRAUD IN JUDGMENT—WHEN WAIVED.—When the principle of merger applies the party relying upon it must plead it in the second action, or he will be deemed to have waived the right of this defense.

IDEM—FRAUD—WHEN CARRIED OUT.—Petitioner sold his real estate, within this state, and deposited the money realized therefrom in a bank in the state of California, prior to the rendition of the first judgment. Subsequently, when temporarily absent from this state, he transferred this money to Europe: *Held*, that the fraud of petitioner was not merged in the first judgment, because the fraudulent purpose was not fully carried out until after the rendition of such judgment.

IDEM—FRAUD COMMITTED WHEN ABSENT FROM THE STATE—WHEN CONSIDERED AS COMMITTED WITHIN THIS STATE.—As petitioner was a resident of this state, the act of the removal of the money from California to Europe was, in contemplation of law, a fraud committed by him in this state, and the plaintiff is not prevented from enforcing the payment of his judgment, by the means authorized by statute, because some of the alleged fraudulent acts were committed by petitioner during his temporary absence from the state.

IDEM—VOLUNTARY SURRENDER—NOTICE BY PLAINTIFF—RELEASE—SUBSEQUENT ARREST UNDER EXECUTION—STATUTE CONSTRUED.—Petitioner voluntarily surrendered himself into custody before any process had been issued against him, and thereafter, while he was so in custody, the plaintiff notified the sheriff that he did not demand the arrest and detention, and petitioner was allowed to voluntarily depart: *Held*, in construing the provisions of the statute (1 Comp. Laws 416, 424), that such surrender, notice and release, did not prevent the plaintiff from causing his subsequent arrest and detention under an execution issued on the judgment in the second action.

CONSTITUTION CONSTRUED—IMPRISONMENT FOR DEBT.—Article I, section 14, of the constitution does not prohibit the arrest and detention of a defendant for the fraudulent disposition of his property with intent to defraud his creditors, under a judgment in an action for tort.

IDEM—IMPRISONMENT FOR FRAUD—COERCIVE MEANS OF ENFORCING JUDGMENT. The imprisonment of petitioner is for the fraud practiced in attempting to evade the payment of the judgment, and, while in the nature of a punishment, is only a coercive means given by the statute, and sanctioned by the constitution, to enforce the collection of the judgment.

IDEM—COSTS.—The imprisonment is authorized for the costs which are incurred in using the coercive means, as well as for the amount of the principal debt or demand.

HABEAS CORPUS—ERRORS NOT REVIEWABLE.—Alleged errors and irregularities in the proceedings of the court cannot be reviewed upon *habeas corpus*.

HEARING upon *habeas corpus*.

The facts are stated in the opinion.

*A. C. Ellis* and *J. F. Alexander*, for Petitioner.

*R. H. Lindsay* and *Clarke & King*, for Respondent.

By HAWLEY, C. J.:

On the eighteenth day of April, 1883, R. W. Russell commenced an action in the district court of Washoe county against petitioner, William Bergman, to recover damages for malpractice as a physician, and on the thirtieth day of July, 1883, recovered a judgment against him for the sum of three thousand dollars, with interest and costs. Thereafter the said Russell commenced another action, setting forth the judgment by him obtained, and, as matter entitling him to a judgment against the person of petitioner, upon the ground of fraud, alleged, among other things, that on the fifteenth day of June, 1883, petitioner, for the

purpose and with the intent to defeat any recovery, upon execution, of any judgment that Russell might recover in the action first commenced, being the owner of and in possession of real estate of the value of twenty thousand dollars, situate in Washoe county, sold said property and converted it into cash, realizing therefor the sum of sixteen thousand eight hundred dollars, and removed said money out of the state of Nevada, and deposited the same in a bank in Sacramento, in the state of California; that petitioner was not and is not possessed of any other property; that after the entry of judgment in the original action, petitioner applied for and obtained a stay of execution to enable him to apply for a new trial; that on the sixteenth day of February, 1884, his motion for a new trial was overruled; that a stay of execution was then granted until March 1, 1884; that in the month of December, 1883, petitioner surreptitiously, and without the knowledge of Russell, left this state and went to Sacramento, for the purpose of removing and disposing of the deposit of sixteen thousand eight hundred dollars, and did, in pursuance of said scheme and design, by draft and bill of exchange, remove and dispose of said money by making a pretended gift of the sum of sixteen thousand five hundred dollars, and transferring the same, without any consideration whatever, to his father, in the province of Hanover, in Europe, "with the intent then and there, and at all times, to defraud his creditors, and especially with the intent then and there, and at all times, to defraud this plaintiff out of his said judgment and demand;" that execution had been issued on the judgment obtained by Russell, and returned *nulla bona* by the sheriff; that he, Russell, did not know, at the time petitioner removed his property from the state of Nevada, that petitioner was removing the same, and had no means of knowing thereof, and did not learn the same until after the rendition of the judgment on the thirtieth of July, 1883.

The trial of the second suit resulted in a judgment on the twenty-second day of May, 1884, in favor of Russell for the sum of three thousand three hundred and twenty-four dol-

lars and ninety cents and costs, taxed at one hundred and
sixty dollars and five cents; and, upon the general verdict
and special findings of the jury, it was "further considered
and adjudged that the defendant, William Bergman, has
removed his property, and all his property, from the state
of Nevada with intent to defraud his creditors, and with
intent to defraud his said creditor R. W. Russell, plaintiff
herein; and it is considered and adjudged that said defend-
ant, William Bergman, is guilty of removing his property,
and all his property, from the state of Nevada with intent
to defraud his creditors, and to defraud plaintiff herein his
creditor; and plaintiff is hereby adjudged and awarded
execution against the body of said defendant, William
Bergman, to be taken in satisfaction of the money judg-
ment hereinbefore awarded and recovered; he, said Berg-
man, to be arrested, detained, and confined in the common
or county jail of said Washoe county, state of Nevada, in
satisfaction of this judgment, until such time as he shall pay
and discharge said money judgment herein, or be other-
wise lawfully discharged therefrom; and plaintiff is hereby
awarded execution pursuant to the tenor and effect hereof, as
by law in such case made and provided."

Contemporaneously with the filing of the complaint in
the second suit, an affidavit was filed on behalf of plaintiff,
setting forth the same facts as alleged in the complaint;
and thereupon an order was made by the district judge,
requiring the sheriff of Washoe county to arrest petitioner,
and that he be held to bail in the sum of four thousand
dollars. On the twenty-fourth day of March, 1884,
petitioner gave the required undertaking in the form pre-
scribed by law, and was released from custody. On the
tenth day of June, 1884, more than ten days after the ren-
dition of the judgment, petitioner surrendered his body to
the custody of the sheriff of Washoe county, for the pur-
pose, as stated by him, of exonerating his sureties. Three
days after this surrender, and while petitioner was still in
custody, the attorneys for Russell gave to the sheriff a
written notice, as follows: "In conformity with verbal

notifications heretofore given, we now notify you in writing that the plaintiff * * * does not now, nor has he at any time subsequent to the third inst., any claim or demand that the defendant's person be taken by you in satisfaction of the judgment rendered in said action. If at any time since that time you have been detaining him, it is at your own risk, and on your own responsibility. So far as you or your bondsmen are concerned, the plaintiff exonerates you wholly from any liability in the premises, and looks to the sureties on the bail-bond to pay said judgment."

Petitioner thereupon notified the sheriff that he had surrendered himself in exoneration of his sureties, and that he held himself in readiness to obey the orders of the sheriff in obedience to the requirements of the judgment, and thereupon he was allowed to go at large. Thereafter, to-wit, on the twentieth of June, a writ of execution was issued in said second suit, which, after reciting the money judgment, and the judgment convicting petitioner of fraud, commanded the sheriff to take the body of petitioner into his custody, and to keep, detain, and imprison him in the common or county jail of Washoe county until the said "moneyed judgment, together with costs and interest, and accruing costs, be wholly paid and satisfied, or he be otherwise legally discharged."

Upon these facts, did the district court exceed its jurisdiction in causing the arrest and detention of petitioner? Is the process issued in this case authorized by any judgment, order, or decree of any court, or is it sanctioned by any provision of law? The proceedings were instituted under the fifth subdivision of section 73 of the act relating to arrest and bail in civil actions, which provides that the defendant in the action may be arrested when he " has removed or disposed of his property, or is about to do so, with intent to defraud his creditors." (1 Comp. Laws, 1135.) This statute gives authority for the proceedings in *Russell* v. *Bergman*, unless the plaintiff lost his right by failing to proceed in the first action, or from some other cause. If the plaintiff had knowledge of the alleged fraud-

ulent acts of petitioner during the pendency of the first action, prior to the rendition of judgment therein, it may be that he might have alleged the same, and that he should have caused the arrest in that suit; but, inasmuch as the plaintiff had no knowledge of the fraud until after the judgment in that action was rendered, I am of opinion that he had the right to take the steps authorized by statute after he obtained knowledge of the fraud.

The fact that the fraudulent acts were committed prior to the rendition of the judgment in the first suit, did not divest the court of its authority to cause the arrest of the petitioner in the second action. The fraud of petitioner was not merged in the judgment in the first suit. Where the fraud is committed in the making of the contract, or in immediate connection therewith, it would undoubtedly be merged in the judgment on the contract; but it is questionable whether the principle of merger has any application whatever to a case like the one under consideration, where the fraud alleged is independent of the cause of action instituted by the plaintiff. If it does apply, then it was the duty of petitioner to have plead the merger in the second suit. Not having done so, he has waived the right of this defense.

In *Cable* v. *Cooper* the court said: "The defendant in the original action was bound to plead his discharge, if he wished to avail himself of his exemption from imprisonment for the same cause, secured to him by the statute. If he had been convicted of perjury in procuring his discharge, he was, notwithstanding his discharge, liable to be again imprisoned, either on the old judgment, or under a new judgment recovered upon the old one, in an action of debt; and if the discharge had been pleaded, the plaintiff might have replied to it such conviction, which would have been conclusive to bar him of his exemption. The privilege from imprisonment, to which Brown was entitled under the statute, certainly might be waived, and the omission to plead the discharge in the proper time was a waiver." (15 Johns. 154.)

In this case, however, it affirmatively appears that the fraudulent purpose of petitioner was not fully carried out until after the entry of judgment in the first suit. The removal of the money from Sacramento, California, to Hanover, in Germany, if the act was done, as alleged, in furtherance of the fraudulent design to hinder, delay, and defraud the plaintiff, authorized the arrest of petitioner in the second suit. But it is argued that this act was committed out of this state, and hence, it is claimed that the district court had no jurisdiction to imprison petitioner for a fraud committed in another state. This position is not well taken. The act was committed by petitioner, who was at the time a resident of this state. In contemplation of law it was a fraud committed by him in this state. It stands upon the same footing as if petitioner, when he deposited the money in Sacramento, had taken a certificate of deposit from the bank, and then came into this state and here fraudulently transferred the certificate to his father. It was a fraudulent act that followed the person. Plaintiff had the right to pursue any course authorized by statute to enforce the payment of his judgment which was obtained in this state, and he is not prevented from so doing because some of the acts of petitioner were committed during his temporary absence from this state. The right of plaintiff to arrest the petitioner is a portion of the remedy which the law of this state has provided for the enforcement of plaintiff's demand.

In *Claflin* v. *Frenkel* the plaintiffs were merchants in the city of New York, and they sold and delivered goods to the defendants in Mobile, Alabama. The defendants were arrested in the suit instituted in the state of New York, and they claimed that the fraud, if any, was committed in the state of Alabama, and that they could not be held for the fraud committed in another state. The supreme court, in passing upon this question, said: "Plaintiff's' affidavit was carelessly drawn, but still it is to be inferred from it, as the plaintiffs were engaged in carrying on their business at the city of New York, that the sales were made at that

place, and that the defendant's liability was incurred, for the payment of the price of the goods, under and in conformity with the laws of this state ; and for that reason, when he was found here, there would seem to be no impropriety in subjecting him to all the legal remedies, which the law secured to the plaintiffs for the purpose of enabling them to obtain payment of their debt.   The order of arrest was made for the reason that the defendants, after contracting this debt, had disposed of their property with intent to defraud their creditors.    This was done in the city of Mobile, in the state of Alabama, where the defendants carried on their business.    And that they did so dispose of their property is a fact left free from dispute in the case.    Because this disposition was made by them of their property in another state, it has been urged that it formed no ground of arrest in an action prosecuted in this state, and that their arrest was unauthorized, if the defendants did not subject themselves to that remedy, by the fact of the goods being purchased and delivered to them in this state.    But, as the Code has provided the remedy of arrest, it has not made it dependent upon any such distinction.    It has, on the other hand, declared in general terms, that the defendant may be arrested in an action upon contract, express or implied,    *    *    *    where, since the making of the contract, he has removed or disposed of his property with intent to defraud his creditors. This remedy has been provided for in terms so broad as to be subject to no exceptions.    In language, certainly, it includes all actions on contract against a defendant who has removed or disposed of his property, intending thereby to defraud his creditors.    The code itself has not declared this to be a violation of the obligation of the debtor to his creditors, but it arises out of the general principles of law adopted to secure the substantial morality and good faith of persons engaged in trade.    At the common law, and wherever its principles may be observed, the debtor is restrained from making any disposition of his property, intending thereby to defraud his creditors.    This obligation is recognized, and in some form enforced, wherever the

common law prevails; and, as that law is presumed to exist in the state of Alabama, it was obligatory upon these debtors, carrying on their business there. In effect, they were prohibited, by its wholesome restraint, from making any disposition of their property with the intention thereby of preventing their creditors from collecting their debts. By making such a disposition, these defendants violated this restraint of the law, and the obligation resting upon them in favor of the plaintiffs as their creditors. And for that violation they became subject to arrest, under this provision of the Code, whenever either of them placed himself within the reach of the process of this court." (29 Hun 289.)

It is contended that the notice given to the sheriff by plaintiff's counsel was an order, or, at least, consent, for petitioner's discharge from custody, and that, petitioner having been discharged by this act of plaintiff, he is not now subject to arrest under the writ of execution.

Section one of the act for the relief of persons imprisoned on civil process provides that "every person confined in jail on an execution issued on a judgment rendered in a civil action, shall be discharged therefrom upon the conditions hereinafter specified." (1 Comp. Laws, 416.) Section nine provides that "the plaintiff in the action may, at any time, order the prisoner to be discharged, and he shall not thereafter be liable to imprisonment for the same cause of action." (Id. 424.)

The discharge mentioned in section 9 has reference to the cases mentioned in section 1, where the prisoner is held under and by virtue of a writ of execution against the person. In such cases the discharge of the prisoner, by the plaintiff in the action, would, under the provisions of the statute, be a bar to his subsequent arrest upon the same cause. (Freem. Ex'ns, sec. 464 ; Herm. Ex'ns, sec. 573.) But in this case no execution had been issued. The petitioner had voluntarily surrendered himself into custody before any process was issued for his arrest. He claims that he had the right so to do under the provisions of section

82 of the statute relating to arrest and bail. This section provides as follows: "At any time before judgment, or within ten days thereafter, the bail may surrender the defendant in their exoneration; or he may surrender himself to the sheriff of the county where he is arrested." (1 Comp. Laws, 1143.)

This statute is by no means clear. At first blush, it would seem that the voluntary surrender therein referred to, in order to exonerate the bail, must be within ten days after judgment. It is, perhaps, unnecessary to decide this question in this proceeding, but it is proper to say that the supreme court of California, from which state our statute was adopted, have held that some final process should issue against the judgment debtor before the bail could be charged.

In *Matoon* v. *Eder*, an action upon a bail-bond, Murray, C. J., after stating that the statute defied judicial exposition, and referring to other provisions, said: "It is difficult to reconcile the provisions of these sections upon any other hypothesis than that the legislature have omitted, through inadvertence, to provide for final process in these cases; and it is a singular anomaly that bail should be charged who have undertaken that the defendant will render himself amenable to the process of the court, when the fact is admitted that no process has issued, and that the debtor has at all times been within its reach." (6 Cal. 60.)

In *Allen* v. *Breslauer*, the defendant, after the expiration of ten days from the entry of judgment, surrendered himself to the sheriff in discharge of his sureties. But the sheriff, acting under the plaintiff's instructions, refused to take him into custody. In the suit against the sureties the court said: "The question presented is whether, under this state of facts, defendants are liable. We think not. The legislature, when providing for the surrender of defendant within ten days after judgment, evidently contemplated that the plaintiff should take such measures as would authorize the officer to hold defendant in custody. 'The law requires no man to do a vain thing' is a familiar

maxim, and certainly it would be in vain to require a party to surrender to an officer having no power to detain him. The construction contended for by plaintiff would enable a defendant to release his sureties by a surrender before execution, and then at once be released on *habeas corpus,* on the ground that he was illegally in custody. Such a result was never intended by the legislature, and we are of opinion that a surrender within ten days after execution is a sufficient compliance with the will of the legislature.'' (8 Cal. 554.)

In the light of these authorities it was a vain thing for petitioner to surrender himself before any process had been issued against him. The plaintiff did not cause his arrest, and the notice, although it may have been given with the idea that the sureties on the bail-bond could be held because no surrender had been made within ten days after judgment, simply informed the sheriff that the plaintiff had taken no steps for petitioner's arrest, had issued no process against his person, and was not responsible for his detention.

The sheriff had no process authorizing him to hold petitioner. Petitioner was voluntarily in custody, and had the right to go hence, or to remain in custody, if he so desired, in order to test the true construction of the statute. He chose to take his liberty, and, while insisting that he should be detained, went his way. His voluntary departure did not have the effect of preventing his arrest under the writ of execution at the instance of the plaintiff.

It is next claimed that the fifth subdivision of section 73 (1 Comp. Laws, 1135) is in conflict with section 14, art. I, of the constitution of this state, which declares that ''there shall be no imprisonment for debt except in cases of fraud.'' It is argued that, under this provision, in order to authorize the imprisonment of the debtor, the debt must be one arising *ex contractu,* and that no arrest is authorized in actions of tort. This position is wholly untenable. It is the immunity from imprisonment for debt that is confined to debts arising *ex contractu.* This is the prohibition intended by the constitution. (*McCool v. State,* 23 Ind. 131; *People ex*

*rel. Brennan* v. *Cotton,* 14 Ill. 415 ; *McKindley* v. *Rising,* 28
Ill. 337 ; *Moore* v. *Green,* 73 N. C. 397 ; *Long* v. *McLean,*
88 N. C. 4 ; *U. S.* v. *Walsh,* 1 Abb. (U. S.) 72.)

In *McCool* v. *State* the court said : "The second clause
of the section prohibiting imprisonment for debt except in
case of fraud, connected as it is with the first clause by the
copulative conjunction, would seem to relate to the same
subject or class of liabilities, and if so, the immunity con-
templated by the second clause would be confined to debts
or liabilities growing out of contracts, and not to liabilities
resulting from crimes or torts."

In *People ex rel Brennan* v. *Cotton,* Treat., C. J., in deliver-
ing the opinion of the court, said that the prohibition of the
constitution "applies only to actions upon contracts express or
implied. It does not extend to actions for torts. The design
is to relieve debtors from imprisonment who are unable to
perform their engagements. They are exempt from arrest
if they act in good faith to their creditors."

The petitioner in this case is not entitled to the immunity
given by the provisions of the constitution. "In cases of
torts, and where debts were fraudently contracted, or where
there is an attempt at a fraudulent disposition of property
with intent to delay the creditor, or to deprive him of
payment, the body of the debtor is allowed to be seized
and confined." (Cooley, Const. Lim. 341 ; 4th Ed. 422.)

Finally, it is urged that petitioner cannot be imprisoned
for the costs of the second suit; that so much of the judg-
ment as awards his imprisonment for these costs is authoriz-
ing imprisonment for a debt pure and simple, and is there-
fore unconstitutional. No authority has been cited which
sustains this view.

*Merrill* v. *Townsend,* 5 Paige Ch. 80 ; *Ex parte Beatty,*
12 Wend. 229 ; and *Prince* v. *Camman,* 3 Edw. Ch. 413,
cited by petitioner, have no application to the facts of this
case. The decisions are to the effect that a complainant in
chancery, in a suit founded on a contract, where his bill is
dismissed and a judgment for costs rendered against him,
cannot be imprisoned for the costs. But under the amended

provisions of the code in that state, it has been held that the complainant in a certain class of actions, when his suit has been dismissed, may be arrested and imprisoned for the costs.

In *Parker* v. *Spear*, 62 How. Pr. 394, the court, in condemning the law which authorized it, was compelled to declare that under the provisions of the code, in an action in which the defendant could have been arrested and where the plaintiff was unsuccessful, "the attorney for the defendant has the right to imprison the plaintiff to collect his costs."

*Bull* v. *Melliss*, 13 Abb. Pr. 243, cited by petitioner, is also inapplicable. There "the credit was given by the plaintiffs and the goods sold, as appears by the complaint, at various times between October 1, 1860, and April 1, 1861. The representations which are charged to be fraudulent, were made in January, 1861, and afterwards," and the court very properly held that upon these allegations it could not be said "that the whole of the debt for which the plaintiffs have recovered judgment was fraudulently contracted, and it would not be sufficient to justify a *ca. sa.* upon this judgment that part of it was so."

In *Thompson* v. *State*, 16 Ind. 516, the court held that a party could not be imprisoned for the costs in a criminal action. This case was cited as authority in *State ex rel. Quinn* v. *District Court*, 16 Nev. 77, where that question was not directly involved; but this rule is strenuously disputed. *Thompson* v. *State* was overruled in *McCool* v. *State, supra*, where the imprisonment of defendant for the fine and costs was sustained.

But, whatever the rule may be in the class of cases above referred to, it seems clear to my mind that, in an action like *Russell* v. *Bergman*, the costs are but an incident to the debt, and are necessarily incurred in order to procure the enforcement of the judgment. The imprisonment of petitioner is for the fraud practiced in attempting to evade the payment of any judgment that Russell might obtain against him, and this imprisonment, while in the nature of a pun-

ishment, is a coercive means given by the statute and sanctioned by the constitution to enforce the collection of the judgment, and, in all cases of this character, is considered "an element of remedial justice." (Hurd Hab. Cor. 20.) It must therefore necessarily follow that the imprisonment is authorized for the costs which are incurred in using this coercive means to enforce the collection of the judgment, as well as for the amount of the principal debt or demand.

Several other minor questions were argued by petitioner's counsel, some of them relating to alleged errors and irregularities which it is not, by the established rules of the law, within my province to review. (*Ex parte Winston*, 9 Nev. 75, and authorities there cited; *Peltier* v. *Pennington*, 14 N. J. Law, 312; *Ex parte Parks*, 93 U. S. 18.) None of them are of such a character as to justify petitioner's discharge on *habeas corpus*.

Petitioner is remanded into the custody of the sheriff of Washoe county, to be held and confined in the county jail of said county, under the writ of execution in the suit of *Russell* v. *Bergman*, until he is legally discharged.