BEEZER, Circuit Judge:
This appeal involves the rights of a financing buyer of cattle under California law and the Bankruptcy Code. Granada Cattle Services, Inc., Granada Management Corp., (formerly Premier Angus, Inc.), Granada Corp., and Integrated Cattle Systems IV (collectively “Granada”), appeal a partial summary judgment, granted by the bankruptcy court and affirmed by the district court, in favor of appellee Black & White Cattle Co.' (“B & W”). The bankruptcy court held Granada has no interest in certain cattle held by B & W, the debtor and debtor in possession, pursuant to a cattle feeding agreement between the parties. We affirm in part and reverse in part.
FACTS
B & W is a California limited partnership, currently in Chapter 11 bankruptcy proceedings, which operated a calf raising facility and a feed lot facility at two separate California locations. Granada is composed of various Texas corporations and partnerships in the business of buying feeder cattle for their customers, causing them to be fed and raised by third parties until they reach slaughter weight, and then selling them for beef.
In February 1981 Granada and B & W began negotiating a “Cattle Feeding Agreement” (the “Agreement”), which was finally executed on July 17. The Agreement provided that B & W would purchase approximately 6,000 day-old calves “on behalf of” or “for the account of” Granada’s customers, which are referred to collectively throughout the Agreement as the “Owner,” and that “Owner” would retain title to any cattle that it “placed on the facilities.” B & W was obligated to reimburse “Owner” for certain losses suffered from the death of “Owner’s animals.” The Agreement also provided that the cattle could be commingled with other cattle in the calf yard and feed lot facilities “[ajfter the cattle have been properly tagged and identified____” The Agreement was to last for three years.
Between May 15 and June 16,1981, while the Agreement was being negotiated, B & W acquired numerous calves from its regular suppliers. Among the undifferentiated, commingled calves acquired at that time were 1,204 that B & W later identified as those covered by the Agreement (and the subject of this action). Granada contends, and the bankruptcy court found, that the 1,204 calves were purchased by B & W pursuant to an oral agreement entered into with Granada on May 14. Granada reimbursed B & W for the cost of the 1,204 calves and paid B & W’s various monthly charges for caring for the animals, as required by the Agreement.
Although the Agreement was executed on July 17, it had an effective date of May 15 to cover the “Cattle on hand.”
After July 17, B & W continued to care for the calves at its calf yard until they were delivered to the feed lot as each reached the desired weight. The deliveries occurred between August 13 and October 15, 1981. Upon reaching the feed lot, B & W for the first time identified the 1,204 cattle as those covered by the Agreement by placing the animals in a separate pen and by giving each an identifying ear tag. The cattle were branded with a brand registered to one of B & W’s general partners.
On April 23, 1982, some months after the last of the cattle were delivered to the feed lot, B & W filed a Chapter 11 bankruptcy petition. B & W subsequently filed an adversary proceeding as debtor and debtor in possession in the Bankruptcy Court for the Central District of California seeking, *1457 among other things, an order declaring invalid Granada’s claimed interest in the 1,204 head of cattle still on B & W’s feed lot.[1]
The bankruptcy court granted partial summary judgment in favor of B & W. The court invalidated Granada’s claim of ownership on the ground that Granada did not comply with California Civil Code § 3440.[2] The court reasoned that § 3440 requires actual delivery to and possession by a buyer to avoid a conclusive presumption of fraud against the seller’s creditors. The district court summarily affirmed the bankruptcy court’s action. Granada appeals.
ANALYSIS
A. Bankruptcy Court Jurisdiction
Granada argues that the bankruptcy court was without jurisdiction to adjudicate this action. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We recently rejected an identical argument. In re Thomas, 765 F.2d 926, 928-30 (9th Cir.1985). The bankruptcy court had jurisdiction to adjudicate this action.
B. Standard of Review
Our task in reviewing a summary judgment is identical to that of the trial court. Viewing the evidence in the light most favorable to the party opposing the summary judgment, we must determine under a de novo standard whether there is no genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law.
De novo review is appropriate even though this action was filed before the bankruptcy court and the district court applies state law. We review bankruptcy court conclusions of law de novo____ [W]e need not accord special deference to a district judge’s interpretation of the law of the state in which he sits. Our review is therefore de novo.
In re New England Fish Co., 749 F.2d 1277, 1280 (9th Cir.1984) (citations omitted); accord In re Nash, 765 F.2d 1410, 1412 (9th Cir.1985) (“The bankruptcy court’s grant of summary judgment, affirmed by the district court, is subject to de novo review.”).
C. Effect of Cal.Civ.Code § 3^0 The Agreement that B & W purchase calves “on behalf of” or “for the account of” Granada was signed on July 17 and made retroactive to the day the first animal was purchased. Granada contends that under the terms of the Agreement the cattle were acquired by B & W as agents for Granada, that Granada had title to the cattle at all times and B & W never had title, and that there was therefore no transfer to be set aside by the operation of § 3440. This argument is without merit.
B & W bought the newborn calves directly from suppliers in its own name. B & W spent its own funds and paid suppliers with checks drawn on B & W’s account. B *1458 & W took possession of the calves and branded them with a brand registered to a general partner of B & W. B & W agreed to and in fact did bear the risk of loss of the newborn calves. At the time of purchase, moreover, the calves were not identified to B & W’s contract with Granada. In short, B & W possessed sufficient indicia of ownership to be called the owner of the calves. Although contracting parties may agree to transfer or divest title retroactively, it would be stretching the fiction to say that B & W never had title. The very purpose of § 3440 demands this conclusion; to allow parties to defeat § 3440 by characterizing their relationship as an agency agreement would emasculate § 3440. The July 17 contract, therefore, constituted a transfer of title.[3]
Granada contends that although it did not have actual possession of the cattle, the tagging and segregation of the animals at the feed yard constituted constructive possession sufficient to satisfy the statute. The only facts relevant to this issue are undisputed, namely, that the cattle were at all times in B & W’s actual possession, that after they arrived at the feed lot they were segregated from the other animals and given ear tags identifying them as Granada animals, and that they bore a brand registered to a B & W general partner.[4]
Constructive or symbolic delivery “is not altogether forbidden, since not all species of property are subject to the same kind of possession. But symbolic or constructive delivery is insufficient when the nature of the property and the situation of the parties render it practicable to make actual physical delivery.” 16 Cal.Jur.3d Creditors’ Rights and Remedies § 363 (1983). The only question is whether, under California law, cattle are the type of property that the statute requires to be actually physically delivered.
If delivery is practicable, segregation and labeling will not satisfy the delivery and possession requirements. See, e.g., O’Connor v. O’Connor, Rice & Barnes, 44 Cal.App.2d 1, 111 P.2d 656 (1941) (books and maps); Vance v. Boynton, 8 Cal. 554 (1857) (500 sacks of barley). On the other hand, where the property is “not property of which manual possession could be taken,” labeling has been held to satisfy a similar Washington statute. McFarland v. Wendorf, 1 F.2d 850 (9th Cir.1924) (unspecified number of piles of cut logs, each pile containing from 50 to 1,000 logs, labeled and left next to a public roadway). Even in the absence of labeling or segregation, constructive delivery has been found where the property was “bulky and not readily transferable by manual delivery.” See Shepherd v. Gamble, 95 Cal.App.2d 890, 214 P.2d 403 (1950) (large tractor kept in remote location); Rosenthal v. Taylor, 87 Cal.App. 399, 262 P. 395 (1927) (pumps and cone tank); cf: Montgomery v. Hunt, 5 Cal. 366, 369 (1855) (merely pointing out cattle that were grazing on open range constituted sufficient change of possession). Although no case has decided directly whether penned cattle are too bulky to make actual delivery impracticable, or whether they may be constructively delivered by tagging or segregation, every case in which penned cattle have been sold but not physically delivered has held the sale void. See Della v. Home Bank of Porterville, 105 Cal.App. 106, 286 P. 1064 (1930); *1459 George v. Pierce, 123 Cal. 172, 55 P. 775 (1898); see also Shepherd v. Gamble, 95 Cal.App.2d 890, 214 P.2d at 405 (distinguishing Della on the ground that it “involved a sale of cattle which could have been removed under their own power but remained in possession of the seller.”). These cases, along with the prior transfer of the same animals from the calf yard to the feed lot, and the generally ambulatory nature of the healthy living animals, strongly imply that physical delivery of cattle in general and these animals in particular was entirely practicable,[5] with the result that constructive delivery will not satisfy the requirements of § 3440.[6]
Therefore, no genuine issue of material fact regarding the delivery and possession of the animals existed, and the bankruptcy judge correctly ruled that the tagging and segregation of the cattle did not satisfy the statutory possession and delivery requirements.[7]
D. Effect of Cal. Comm. Code § 2402(2)
The foregoing analysis, however, does not end our inquiry into the operation of § 3440. The last paragraph of Cal.Civ. Code § 3440 provides that “[subdivision (2) of Section 2402 of the Commercial Code is not restricted by the provisions of this section.” Section 2402(2) provides:
(2) A creditor of the seller may treat a sale or an identification of goods to a contract for sale as void if as against him a retention of possession by the seller is fraudulent under any rule of law of the state where the goods are situated, except that retention of possession in good faith and current course of trade by a merchant-seller for a commercially reasonable time after a sale or identification is not fraudulent.
The official code comment to § 2402 clarifies its purpose:
Purposes of Changes and New Matter: To avoid confusion on ordinary issues between current sellers and buyers and issues in the field of preference and hinderance by making it clear that:
... 2. The retention of possession of the goods by a merchant seller for a commercially reasonable time after a sale or identification in current course is exempted from attack as fraudulent.
The effect of § 2402(2) on the operation of § 3440 is to eliminate the conclusive presumption of fraud where all the requirements are met. See Gardner v. Sullivan & Crowe Equipment Co., 17 Cal.App.3d 592, 597, 94 Cal.Rptr. 893, 895 (1971).
The bankruptcy court’s primary objection to the application of § 2402(2) in the instant case was that B & W’s retention of possession of the cattle after the transfer was not for a commercially reasonable time. The court reasoned that
section [2402(2)] basically restates the rule of § 3440. The rationale of this rule likewise parallels that of § 3440. It seeks to protect creditors against a debt- or who gives a deceptive appearance of ownership by retaining possession after title has passed to a third party. Unlike § 3440, this section provides a very limited exception where goods are retained *1460 for a commercially reasonable period of time.
The bankruptcy court’s reasoning essentially reads the statutory exception out of existence. The legislative history of §§ 3440 and 2402 requires greater respect for the effect of § 2402.
Prior to 1963, California Civil Code §§ 1746 and 3440 governed the rights of buyers of undelivered goods and creditors of sellers.[8] In 1963, the California Legislature expanded the rights of buyers by adopting § 2402(2) along with the remainder of the Uniform Commercial Code. The California Code Comments state that “[s]ubdivision (2) is similar to former Civil Code § 1746 (creditor’s rights against sold goods in seller’s possession), except that under the Commercial Code there is no fraud if in good faith a merchant-seller retains possession for a reasonable time after the sale in the course of trade.” Cal. Comm.Code § 2402 (West 1964). The Legislature expressly repealed § 1746. 1963 Cal.Stat. c. 819, p. 1997, § 2, effective January 1, 1965. The expansion of buyers’ rights, therefore, altered the existing law. Section 3440, however, temporarily remained unchanged.
The Legislature recognized the potential conflict between § 3440 and the newly adopted § 2402(2). In 1967, the Legislature amended § 3440 by adding the language that stated that § 3440 would not restrict § 2402(2). 1967 Cal.Stat. c. 799, p. 2200, § 1; see California Committee on Continuing Education of the Bar, Review of Selected 1967 Code Legislation 48 (1967). This language limits § 3440, not § 2402(2). To the extent that § 2402(2) provides a buyer of goods with greater rights than does § 3440, such a result is the direct product of a deliberate legislative decision. Contrary to the bankruptcy court’s conclusion, § 2402(2) is not equivalent to § 3440; section 2402(2) is a significant departure from prior law. This expansion of buyers’ rights is consistent with the broad purpose of the Commercial Code to accommodate commercial practices. See Cal.Comm.Code § 1102(2)(b).
Recognition of a buyer’s rights under § 2402(2) does not render § 3440 nugatory. Section 3440 applies when § 2402(2) does not. See Gardner v. Sullivan & Crowe Equipment Co., 17 Cal.App.3d at 596, 94 Cal.Rptr. at 895. Section 2402(2) only applies when the seller is a merchant, and he retains possession in good faith, in the current course of trade, and for a commercially reasonable time. If any of these conditions are absent, § 2402(2) will not apply and § 3440 will govern.
The bankruptcy court concluded that B & W’s actions were not reasonable because Granada was never to obtain actual possession of the cattle. The court’s emphasis on delivery to Granada is misplaced. Commercial contracts frequently require delivery of goods to someone other than the immediate buyer. The proper focus is on the time of retention of possession by the seller, not on the identity of the person to whom the goods are to be delivered. Cal.Comm.Code § 2402(2).
The court also expressed concern regarding the indefiniteness of the time of retention of possession by B & W. The agreement between B & W and Granada provided that B & W would deliver the cattle to Granada’s customers when the cattle reached slaughter weight. Although this provision did not specify a particular date of delivery, it did specify a definite and identifiable condition precedent to B & W’s duty to deliver the cattle. See e.g., Houghland v. Rothblum Packing Co., 99 Cal.App. 631, 279 P. 159 (1929) (contract requiring seller to deliver sheep “after fattening” held enforceable on grounds that *1461 industry practice indicated that delivery was within reasonable time). The time of delivery, therefore, was definite.
The evidence offered by Granada in opposition to the motion for summary judgment indicated that Granada and B & W had valid business reasons for delaying delivery. B & W’s primary obligation was to raise and feed the cattle for distribution to California customers of Granada. Although delivery to Granada in Texas was possible, such a course of action would have defeated Granada’s purpose for hiring a California feed lot operator. Moreover, Granada offered affidavit testimony indicating that such feeding arrangements are common in the cattle industry. This evidence created a genuine issue of material fact regarding the commercial reasonableness of the time of retention of possession of the cattle. Summary judgment, therefore, was improper on this issue.[9]
E. Federal Improvement Lien
Granada contends that, if it is not found to be the owner of the cattle, it is entitled to an improvement lien upon the animals held in Granada’s name by B & W. 11 U.S.C. § 550(d) entitles a good faith transferee of an avoided transfer that may be recovered by a trustee to a lien on the property equal to the lesser of (1) the cost to the transferee of any improvements made after the transfer or (2) any increase in value as a result of such improvements. The bankruptcy court denied Granada’s request for a lien for $432,058.02, the amount the cattle increased in value as a result of Granada’s expenditures for care and feeding while the cattle were in B & W’s possession.[10] The court denied the lien on the grounds that (1) although there was a transfer sufficient to invoke the California fraudulent conveyance statute, there was no recoverable transfer within the meaning of the bankruptcy code, and (2) as a violator of the presumptive fraud statute Granada could not be considered a good faith transferee. Although there is no case law on point, a fair reading of the statutory language indicates that the bankruptcy court erred in denying Granada a lien on these grounds.
The bankruptcy court decided that a transfer had occurred within the meaning of the California fraudulent conveyance statute, under which a transfer is defined as “those transactions which, as between the parties, pass, or purport to pass, the title or right of possession to the property. The transfer ... must be such an act as vests the real or apparent ownership of some interest in the transferee.” (quoting Scholle v. Finnell, 173 Cal. 372, 377,159 P. 1179 (1916)). The court decided, however, that there was no transfer for bankruptcy purposes, stating that under § 101(40) [now § 101(48)] of the bankruptcy code the es *1462 sential aspect of a transfer requires “a disposition of or parting with property.” (quoting 2 Collier on Bankruptcy, 11101(10) (15th ed. 1982)). The Bankruptcy Code, however, states that “ ‘transfer’ means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest....” 11 U.S.C. § 101(48). The bankruptcy definition of “transfer” is at least as broad as the California definition, and it expressly encompasses transfers of an interest in property as distinct from transfers of the property itself. Since the bankruptcy court was correct in holding that a transfer sufficient to invoke the California statute occurred, it follows that a transfer within the meaning of the bankruptcy statute also occurred.
Similarly, B & W argues that since it at all times retained physical possession of the animals, it merely avoided the transfer rather than recovered the property transferred, making § 550(d) inapplicable. B & W relies on 11 U.S.C. § 541(a)(1), which provides that the bankrupt’s estate is comprised of “all legal or equitable interest of the debtor in property as of the commencement of the [bankruptcy] case,” (emphasis added), and 4 Collier on Bankruptcy II 541.08[2] (15th ed. 1985), which points out that it is important to determine what interests a debtor has in the property in his possession (as bailee, consignee, etc.) in order to determine what property comprises the bankruptcy estate. Since only the interests retained by B & W automatically became part of its estate, B & W necessarily had to “recover” any other interests in the property that had been transferred to Granada.
Finally, B & W argues that only transferees in possession should obtain improvement liens, while transferees who contributed to “misleading” the debtor’s creditors by failing to obtain possession should be denied such a lien. The statute refers broadly to “transferees,” and there is nothing in the statute or case law to suggest that Congress meant only transferees in possession.
We therefore hold that there was a “transfer” and “recovery” of an interest in property sufficient to invoke the improvement lien statute.
Section 550(d) permits only a “good faith transferee” to obtain an improvement lien on recovered property. B & W argues, and the bankruptcy court held, that because of the conclusive presumption of constructive fraud under Cal.Civ.Code § 3440, Granada cannot be considered a “good faith transferee.” This decision is erroneous.
Section 548(c) of the bankruptcy code provides an exception to the voidability of fraudulent transfers in favor of a transferee that “takes for value and in good faith.” Id.; see 4 Collier on Bankruptcy 11 548.07 (15th ed. 1985). Similarly, in In re Verco Industries, 704 F.2d 1134 (9th Cir.1983), we held that a transferee of a constructively fraudulent conveyance under Cal.Civ.Code § 3440 can make a set-off claim against a bankrupt estate once he returns the property. 704 F.2d at 1138 (relying on Misty Management Corp. v. Lockwood, 539 F.2d 1205, 1214 (9th Cir.1976)). Although B & W seems to accuse Granada of actual bad faith in leaving B & W in possession of the cattle, B & W adduced no facts indicating that either party was considering defrauding creditors at the time they entered into the Agreement. Since the conclusive presumption of fraud under Cal.Civ.Code § 3440 may occur in the complete absence of subjective bad faith, Granada was entitled to summary judgment in its favor on the issue of the 550(d) improvement lien.[11] CONCLUSION
The bankruptcy court’s determination that B & W transfered title to Granada *1463 without sufficient change of possession to satisfy Cal.Civ.Code § 3440 is AFFIRMED. The court’s determination that Cal.Comm. Code § 2402(2) and the corresponding exception to Cal.Civ.Code § 3440 did not apply is REVERSED AND REMANDED for resolution of factual disputes. The court’s determination that Granada is not entitled to an improvement lien is REVERSED.
On remand, the court shall consider the customs and practices of the cattle industry to determine whether B & W’s retention of possession was commercially reasonable.
If the court on remand determines that B & W’s retention of possession was not commercially reasonable within the meaning of Cal.Comm.Code § 2402(2), then Granada shall be entitled to an award of $432,058.02 plus such interest as the court finds appropriate. Granada is entitled to costs incurred for this appeal.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.

. Although the Agreement contemplated the purchase of 6,000 head of cattle, when B & W fell into financial difficulties, Granada instructed B & W not to acquire additional cattle pursuant to the Agreement. Therefore, only the 1,204 head of cattle initially acquired are now at issue.

. At the time this action was filed, § 3440 provided in relevant part:
Conclusive presumption of fraud. Every transfer of personal property and every lien on personal property made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor’s creditors while he remains in possession and the successors in interest of those creditors, and as against any person on whom the transfer- or’s estate devolves in trust for the benefit of others than the transferor and as against purchasers or encumbrancers in good faith subsequent to the transfer.
Subdivision (2) of § 2402 of the Commercial Code is not restricted by the provisions of this section.
The several recent amendments to § 3440 are not relevant to this appeal.

. For other cases utilizing this indicia of ownership approach in dealing with problems of ostensible ownership, see generally, In re Medomak Canning Co., 25 U.C.C.Rep. 437 (Bankr.D.Me.1977) (bailment versus sale), aff'd, 588 F.2d 818 (1st Cir.1978); In re Sitkin Smelting & Refining Inc., 639 F.2d 1213 (5th Cir.1981) (same); see abo D. Baird & T. Jackson, Security Interests in Personal Property 1-114 (1984).

. Granada correctly points out that the bankruptcy judge erred in finding that the animals bore B & W’s brand. However, since the relevanee of the brand is to show an objective indication that the cattle belonged to someone other than B & W, it is difficult to see how the fact that the brand was registered to one of B & W’s general partners rather than to B & W itself would change the analysis.
Since the relevant facts are undisputed, the question of change of possession under § 3440 is a legal question for the court to resolve. See Southern California Collection Co. v. Napkie, 106 Cal.App.2d 565, 569, 235 P.2d 434, 437 (1951).

. Granada correctly points out that the judge erred in stating that it "was encumbant [sic] upon [Granada] either to take actual physical possession of these cattle or give public notice of their ownership by publication and filing as required by § 3440." The public notice alternative of § 3440(h)(2) and (3) only applies to sale-leaseback transactions. However, the court’s conclusion that Granada had an obligation to take actual physical possession of the cattle is still correct.

. Granada also argues that constructive rather than actual delivery will suffice if such is the custom of the industry in question. Neither of the cases cited by Granada support the proposition that a group of businessmen may emasculate the statute by jointly agreeing expressly or implicitly by practice to substitute constructive for actual delivery. See Taney v. Penn National Bank, 232 U.S. 174, 34 S.Ct. 288, 58 L.Ed. 558 (1914); McFarland v. Wendorf, 1 R2d 850 (9th Cir.1924).

. A financing buyer may now protect its interest through the filing of a financing statement prior to the date of the intended transfer. See Cal. Civ.Code § 3440.1(h)(1); Cal.Comm.Code § 9401.

. Section 1746 provided:
CREDITOR’S RIGHTS AGAINST SOLD GOODS IN SELLER’S POSSESSION.
Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void.
Cal.Civ.Code § 1746, repealed, 1963 Cal.Stat. c. 819, p. 1997, § 2, effective January 1, 1965.

. The bankruptcy court also noted that since B & W had never before entered into a similar agreement, the retention of possession was not in B & W’s current course of trade. The bankruptcy court construed "current course of trade” too narrowly. The uncontested evidence establishing that B & W is in the business of buying, raising, and selling cattle. This is exactly what the agreement with Granada entailed. The fact that B & W’s relationship with Granada differed somewhat from B & W’s previous practice does not mean that the retention of possession was outside of B & W’s current course of trade.
B & W also argues that since § 2402(1) only applies to unsecured creditors with statutory rights not possessed by Granada (i.e., rights under Cal.Comm.Code §§ 2502 & 2716), Granada also has no rights under § 2402(2), which B & W characterizes as an exception to § 2402(1). Section 2402(2) specifically refers to "creditors,” however, which the legislature has expressly defined to include "a general creditor, a secured creditor, a lien creditor and ... a trustee in bankruptcy____” Cal.Comm.Code § 1201(12) (West 1970). The legislature should be presumed to have understood the terms it used in both subsections and expressly defined elsewhere. Section 2402(2) is therefore applicable here if all its requirements are met.

. It is undisputed that Granada reimbursed B & W in the amount of $62,400 for the purchase price of the calves. The cattle eventually were sold for $494,458.02. The difference between the purchase and selling price, therefore, is $432,058.02. This amount is less than $435,-931.30 that Granada paid to B & W for feed, care, medicinal expenses and other costs of maintaining the cattle. Under 11 U.S.C. § 550(d), therefore, the proper amount of the lien is $432,058.02.

. Since Granada is entitled to an improvement lien if B & W prevails on the § 2402 issue, we do not reach the rather novel question of whether an equitable lien arises under 11 U.S.C. § 105(a).